NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SUNILAND FURNITURE COMPANY,
Respondent.

No. 24477.

United States Court of Appeals
Fifth Circuit.

Dec. 15, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., William J. Avrutis, Atty., N. L. R. B., Washington, D. C., James P. Wolf, Houston, Tex., Intervenor, for petitioner.

Willis Witt, Houston, Tex., for respondent.

Before JONES, WISDOM and DYER, Circuit Judges.

DYER, Circuit Judge:

The petitioner, National Labor Relations Board, seeks enforcement of its order [1] finding that respondent had violated § 8(a) (3) and (1) of the National Labor Relations Act [2] by discharging employee Moore because of his activities on behalf of the Teamsters Union. The company urges that Moore was discharged because he had threatened another employee, Jordan, with losing his job if he didn't join the union, in violation of the Texas right-to-work law.

This case grew out of an organization campaign by the union at the company's warehouse in Houston, Texas. From the beginning Moore had been active in soliciting support for the union. In April 1965 Moore was laid off along with two other employees because of a seasonal decline in business.[3] He was recalled to work on or about May 5, 1965 and immediately resumed his activities on behalf of the union. That evening after work Moore engaged several employees in conversation, asking each in turn about his feelings toward the union. When Moore asked Jordan's opinion he received a strong negative reaction. Four of the six employees present testified at the hearing as to the conversation which followed. Employee Briley testified that

1. 158 N.L.R.B. No. 17.

2. 29 U.S.C.A. § 158(a) (1), (3).

3. The union filed unfair labor practice charges with the Board in connection

with the lay off, but Moore withdrew them when it developed that the three men had been laid off in order of seniority.

"Moore had told him [Jordan] the election was coming up and he would have to follow through then with whatever was voted.' So he said before he would join he would just quit." Briley further stated that "Moore told him that if the union won he would have to follow suit; he would have to be with it." Employee Rozell testified that "he told him [Jordan] that if he did not join the union he might be out the gate, he might go out the gate." Jordan testified that Moore told him "you know you will be on your way out if we get a union down here." Moore denied making any of these statements and testified that he had not discussed what would happen if the union came in.

Based on this evidence the Board found that the company's action in firing Moore after hearing Jordan's story and checking with one witness was in violation of § 8(a) (3) and (1) of the Act. There is an interesting twist to this case in that the Board credited the fact that the above-quoted statements were made by Moore (and thus at least inferentially discredited its own witness) but nevertheless found a violation of the Act, by interpreting the statements as being non-threatening. Briley's testimony that Jordan was told "he would have to follow suit; he would have to be with it" was interpreted by the Board to mean "that Moore did no more than inform Jordan that if the union won the election it would be Jordan's bargaining agent." Rozell's testimony that Jordan "might go out the gate" was said to "smack more of retirement than discharge." Thus, the question is not the usual one of whether the Board's find-ings on disputed facts are supported by substantial evidence in the record as a whole, e. g., NLRB v. Brown, 1965, 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839, but whether the inferences drawn by the Board from the uncontroverted facts in this case are reasonable ones. We are firmly convinced that the solid sense of these statements does not support the Board's inferences. As we understand the vernacular usage of the English language, a fairly ingenious but twisted interpretation is needed to reach the Board's conclusion. Expressions such as "follow suit" and "get with it" connote active participation or joining, not merely a passive acceptance. The phrase "out the gate" implies forcible ejection or unwilling departure. In reaching its decision the Board interpreted these phrases in a manner which we, from ordinary experience, find entirely unreasonable. We cannot, therefore, conscientiously hold that the finding of the Board that Moore's statements were not threatening is supported by substantial evidence. See Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456. In view of the fact that Texas has a right-to-work law, Vernon's Ann.Civ. St. Art. 5154g, Moore's threatening statements were illegal and not protected. Boeing Airplane Co. v. NLRB, 9 Cir. 1954, 217 F.2d 369, 375–376; NLRB v. Tennessee Coach Co., 6 Cir. 1951, 191 F.2d 546, 549–550. Company officials testified that Moore was discharged only because of his unlawful threats to Jordan and no substantial evidence was introduced to the contrary.[4] Enforcement of the Board's order is therefore

Denied.

---

4. The testimony to the effect that the company failed to check with all of the witnesses and that the company failed to interrogate Moore before firing him does not sufficiently meet the burden of proof placed on the General Counsel to establish discriminatory motive. See NLRB v. Miami Coca-Cola Bottling Co., 5 Cir. 1955, 222 F.2d 341, 345.