## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## KDI PRECISION PRODUCTS, INC., Respondent.

### No. 20322.

United States Court of Appeals, Sixth Circuit.

Decided and Filed Jan. 6, 1971.

Janet C. McCaa, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Coun-

sel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Russell J. Thomas, Jr., Attys., N. L. R. B., Washington, D. C., on the brief) for petitioner.

Michael P. Mullins, Charlotte, N. C. (William W. Sturges, Weinstein, Waggoner, Sturges, Odom & Bigger, Palmer, Jones & Mullins, Charlotte, N. C., Paul R. Moran, Kenneth B. Bassett, Cors, Hair & Hartsock, Cincinnati, Ohio, on the brief) for respondent.

Before TOM C. CLARK, Associate Justice,* EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This matter came before the Court upon an application of the National Labor Relations Board for enforcement of its order against the respondent, KDI Precision Products, Inc. (hereinafter referred to as "the Company"). The order of the Board is reported at 176 NLRB No. 18. The order required the Company to cease and desist from unlawful and coercive interrogation of its employees, to rescind the three day suspension of one employee and to reinstate with backpay a discharged employee.

In July, 1968, the employees of the Company, who were not members of a union, circulated two petitions concerning what they believed to be excessively hot working conditions in their divisions. The reasonableness of their grievance was not questioned in that two days earlier one employee actually fainted from the overheated conditions of the plant. One of the two circulated petitions was confiscated after it had been signed by a considerable number of employees. It read: "We have asked in a nice way for fans. Now we are going to give you until break time, 9:50, 7-19-68 [the next day], or we sit with no work." The Company interrogated each of the employees who signed the petitions which carried the aforequoted language. One employee was suspended for three days for circulating the petition although there was no Company rule concerning such activity and no alleged loss of work efficiency. Another employee, the one who had originally fainted from the heat, was discharged for nodding affirmatively in response to an inquiry as to whether she was "going to do what" the petition stated.

The Company contends that the petition represented an imminent threat of an unlawful plant seizure by a sit down strike. The Company asserts that because the United States Supreme Court decision in NLRB v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939) makes a plant seizure and its accompanying violence unlawful activity, that a clearly articulated threat to carry out such a seizure is also an unlawful unprotected activity. The Board responds that the petition, at best, makes only an inarticulate statement of grievances by a group of non-union workers who did not have the benefit of prior experiences in making formal grievances.

■ We need not consider whether or at what point the threat of a group of employees to engage in a sit-down strike becomes unprotected activity. The petitions of the employees do not unambiguously threaten a sit-down strike or plant seizure. Read as a whole, the petitions appear to be a statement of concern to the management over the working conditions of their employment. No act of violence or imminent threats of a violation of any recognized standard of conduct occurred; further, no unambiguous threat of unlawful conduct was expressed to the Company during its interrogation of each of the signatories of the petitions. These non-union employees sought to peacefully petition their employers for redress of grievances concerning their working condi-

---

* Associate Justice, Supreme Court of the United States, sitting by designation.

tions. Such an activity is certainly as protected a concerted action as was the peaceful strike in which the non-union employees of the Washington Aluminum Company were permitted to engage. NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).

Further, we find no conflict between our holding in this case with that of AHI Machine Tool and Die, Inc. v. NLRB, 432 F.2d 190 (6th Cir. 1970). In *AHI Machine Tool* the majority rejected as "fiction and sophistry" the factual findings of the Trial Examiner, affirmed by the Board, that the employees' walkout was a "good faith" protest based upon a "culmination of a series of incidents that affected the welfare and working conditions of the AHI Tool and Die Shop."

In the instant case, the circulated petitions and stated grievances are clearly related to the employees' working conditions. We find there is very substantial evidence upon which the Board may have found the employees were expressing in good faith a grievance about the excessive heat under which they were working; such expression either by petition or orally to management is a protected activity pursuant to the doctrine of *Washington Aluminum*. We further find there was sufficient evidence upon which the Board could have found that the interrogation by the Company of the signatories to the petitions was coercive. Finally, we affirm the Board's finding that there was substantial evidence that the suspended and discharged employees were unlawfully penalized for the lawful exercise of the rights under Section 7 of the National Labor Relations Act.

The National Labor Relations Board's application for enforcement of its order is granted.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of