**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BIG THREE INDUSTRIAL GAS & EQUIPMENT COMPANY, Respondent.**

Nos. 25859, 25860.

United States Court of Appeals Fifth Circuit.

Jan. 2, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, David C. Nevins, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Elliott Moore, Atty., N.L.R.B., for petitioner.

Charles R. Vickery, Jr., Vickery & McConnell, Houston, Tex., for respondent.

Before GEWIN, PHILLIPS* and GOLDBERG, Circuit Judges.

PHILLIPS, Circuit Judge:

These consolidated cases are before the Court on the petitions of the National Labor Relations Board for enforcement of two orders issued in separate proceedings against Big Three Industrial Gas & Equipment Company (The Company). For a complete recitation of facts reference is made to the decisions and orders of the Board reported at 165 N.L.R.B. No. 3 and 165 N.L.R.B. No. 113.

The Company is a Texas corporation maintaining its principal office and place of business at Houston, Texas, where it is engaged in the manufacture of oxygen, acetylene and argon gasses. One of the present cases originated at the Houston plant and the other at the Beaumont plant. This Court granted partial enforcement of a previous order of the Board against the Company, growing out of activities at its plant at Orange, Texas, in an opinion published at N.L.R.B. v. Big Three Welding Equipment Co., 5 Cir., 359 F.2d 77 (1966).

The Board found that the Company violated § 8(a) (1) and (3) of the Act by discharging employees James Marsh, Justine Rodgers and Dewey Chance because of their union activities. Reinstatement of all three employees with backpay was ordered. The Board further found that the Company violated § 8(a) (1) of the Act by interrogating employees concerning union membership and activities, by inquiring about their statements made to agents of the Board and by creating the impression of surveillance of Union activities.

We grant enforcement of those parts of the orders dealing with the § 8(a) (1) violations and directing the reinstatement of Dewey Chance with backpay. The facts concerning the discharge of James Marsh and Justine Rodgers will be discussed in further detail.

Marsh was employed as a truck driver by the Company from November 22, 1965, until his discharge on April 26, 1966. The employer contends that Marsh, who had received six traffic tickets for moving violations within

---

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

three years and four within a one year period, was discharged solely because of his record of repeated and habitual traffic offenses. The Board found that the real reason for Marsh's discharge was because of his efforts to aid the Union in organizing the Company's truck drivers and to discourage participation in activities on behalf of the Union.

On April 14, 1966, Marsh was hospitalized because of injuries suffered by him when his co-driver overturned one of the Company's trucks. Marsh was in the sleeping compartment at the time. On April 22, 1966, the day after Marsh was released from the hospital, Marsh had coffee at a restaurant with two other drivers and advocated unionization of the drivers. When one of the drivers reported for work, supervisor Kominczak told him that he knew that he had been with Marsh at the restaurant and indicated that he knew that Marsh was "the one that's pushing the union."

Later that day Marsh met again with the same two drivers at another restaurant. Supervisor Kominczak learned that they had talked about the Union and that Marsh had given one of the drivers an authorization card to sign. Kominczak remarked that if Marsh "has got time to campaign for the Union he has got time to be back for work." On April 26 Marsh was discharged on the ground that he had too many traffic violations according to a record just received by the Company from the Texas Department of Public Safety.

■ Even though the Company had a valid ground for discharging Marsh for his traffic violations, if the actual reason for the discharge was because of Union activities, it was a violation of § 8(a) (3). N. L. R. B. v. Longhorn Transfer Service, Inc., 5th Cir. 1965, 346 F.2d 1003, 1006; N. L. R. B. v. Linda Jo Shoe Co., 5th Cir. 1962, 307 F.2d 355.

■ We conclude that substantial evidence on the record as a whole supports the conclusion of the Board that the Company had knowledge of the activities of Marsh in promoting the Union among other drivers, and that the moving cause and dominating motive for his discharge was for the purpose of retaliation against his pro-union advocacy and to discourage participation in activities in behalf of the Union.

■ Our agreement with the conclusion of the Board as to the discriminatory discharge does not mean, however, that we must enforce that part of the order directing his reinstatement. The record shows that Marsh was convicted of four traffic violations within a twelve month period and was an habitual traffic violator under the terms of Vernon's Annotated Texas Civ. Statutes Art. 6687b, § 22(b) (4).[1]

Marsh admitted his traffic violations:

"Well, along about that time I mentioned to Mr. Kominczak that I might have to have a little time off in order to straighten up my driving record, and he asked me what happened, and I told him that I had had quite a few traffic violations and that the State might take my driving license away from me if I couldn't get a ticket taken off my record, or something."

At another point in his testimony he said:

"Well, sir, no company wants a man driving for them that has got too many speeding tickets, I mean, it looks bad on the insurance company, I mean, the insurance company frowns on it, in other words. That was my understanding."

The record of the Texas Department of Public Safety dated April 25, 1966, showed five traffic violations by Marsh in Texas between December 12, 1963, and July 15, 1965. The Company claims that

---

1. This statute, relating to the cancellation, suspension and revocation of driver's licenses, defines an "habitual violator" as "any person with four (4) or more convictions arising out of different transactions in a consecutive period of twelve (12) months * * *."

it did not know of this record until it was received at its office in Houston just before Marsh was discharged.

In addition, Marsh received a ticket in Louisiana in February 1966 for speeding, entered a plea of guilty and paid a fine of $35.

At the time he applied to the Company for employment on November 22, 1965, Marsh represented that he had a record of three traffic violations. As of ·that date his record at Texas State Department of Public Safety showed five violations.

Shortly after his discharge by the Company, Marsh was employed by Pacific International Express as a truck driver, but was terminated because of his record of traffic violations. No Union activities were involved in that discharge.

The Company introduced evidence to show that it has a long established safety policy limiting drivers of company vehicles to three traffic violations in a period of three years.

In N. L. R. B. v. Big Three Welding Equipment Co., 5th Cir. 1966, 359 F.2d 77, 83, supra, this Court refused to enforce the Board's order directing reinstatement of two employees found to have been discharged discriminatorily but who admitted pilfering the property of their employer.

In N. L. R. B. v. R. C. Can Co., 5th Cir. 1965, 340 F.2d 433, this Court declined to enforce an order directing reinstatement of an employee who had threatened "to kick hell out of" the employer's manager. To like effect see N. L. R. B. v. Bin-Dicator Co., 6th Cir. 1966, 356 F.2d 210, 216; N. L. R. B. v. National Furniture Mfg. Co., 7th Cir. 1963, 315 F.2d 280.

In N. L. R. B. v. Coca-Cola Bottling Co., 7th Cir. 1964, 333 F.2d 181, enforcement was denied of an order directing reinstatement of an employee found to have been guilty of falsification and deceit. The Court said: "To force him upon the Company under such circumstances would bring about an impossible situation." 333 F.2d at 185.

As said in Iowa Beef Packers, Inc. v. N. L. R. B., 8th Cir. 1964, 331 F.2d 176, 185, "[A]lthough an employee is unlawfully discharged, his reinstatement is not always warranted where the policies of the Act would not be effectuated by such reinstatement."

Under the circumstances of the present case we are not willing to force the Company to reinstate a truck driver with such a bad record of traffic violations. Compulsory reinstatement would do violence to the safety policy of the Company, which experienced two major truck collision losses immediately prior to Marsh's discharge. More important, his reinstatement would be incompatible with the safety on the public highways.

Turning now to the discharge of Justine Rodgers, the Board's order requires that the Company offer to Rodgers immediate and full reinstatement to his former or a substantially equivalent position with backpay. At the time he was discharged by the Company, Rodgers was serving on a probationary basis with tenure of only two months. He had not completed the ninety day probationary period requirement of all new employees. We hold that the Board's finding of a § 8(a) (3) violation in the discharge of Rodgers is supported by substantial evidence on the record as a whole. In enforcing the Board's order directing his reinstatement with backpay, we make it clear that the Company is required to offer reinstatement only to the probationary status occupied by Rodgers at the time of his discharge.

Enforcement is denied as to that part of the Board's order directing that the Company offer reinstatement to James Marsh with backpay. Enforcement is granted as to that part of the order directing an offer of reinstatement to Justine Rodgers with backpay, but only to the probationary status occupied by him at the time he was discharged. In all other respects enforcement of the order of the Board is granted.