**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**APICO INNS OF CALIFORNIA, INC., d/b/a Holiday Inn of America of San Bernardino, Respondent.**

**No. 74–2556.**

United States Court of Appeals, Ninth Circuit.

March 19, 1975.

[redacted]

John F. Depenbrock, Jr., Atty. (argued), Paul J. Spielberg and Elliot Moore, Deputy Associate Gen. Counsel, NLRB, Washington, D. C., for petitioner.

Andrew C. Peterson (argued), Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for respondent.

Before CARTER, WRIGHT and TRASK, Circuit Judges.

## OPINION

TRASK, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order against Apico Inns of California, Inc., d/b/a Holiday Inn of America of San Bernardino pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., as amended. The Board found that respondent had fired employee and

charging party, Reave Nichols, for filing a grievance over employment conditions with his union[1] in violation of 29 U.S.C. § 158; the Board ordered respondent to cease and desist from further retaliations against employees for using union grievance rights and to reinstate Nichols with back pay. Respondent employer contends that the Board lacked substantial evidence for its finding of retaliation and that even if there was substantial evidence for finding an illegal firing it was not proper to order reinstatement on the facts of this case. The Board's Decision and Order is reported at 212 NLRB No. 46.

The Holiday Inn of San Bernardino operates a restaurant and cocktail lounge on its premises. The staff includes a restaurant manager, three or four waitresses, and day and evening bartenders. In December 1972 Doris Cunner was promoted from restaurant manager to Innkeeper of the Holiday Inn with duties including overall supervision of the restaurant and cocktail lounge. Soon after assuming her new job Cunner shifted Nichols from the evening bartender position to the day bartender slot.

Friction developed between Nichols and Cunner immediately upon the latter's appointment as Innkeeper. During the next seven months Nichols engaged in a "campaign to undermine and replace her." On several occasions Nichols made "derogatory and profane remarks" about Cunner in the presence of the waitresses and lounge customers. He stated that Cunner would not be Innkeeper very long. Nichols frequently drank with customers on and off duty in violation of the Inn's policy. He frequently remained on the premises after his shift in violation of Inn rules.

Nichols engaged in a number of other undesirable activities. He regularly made lewd remarks and suggestions to the waitresses and customers. Profanity was "just normal conversation" to Nichols. He caused at least one waitress to quit her job when he told her she would have to have sexual relations with him or he would make life difficult for her; he made similar advances to another waitress. Once Nichols called a waitress over to where he was seated drinking with a customer and solicited her to engage in an act of prostitution with the customer. On one occasion he was ordered to leave the lounge by Cunner after he became intoxicated and involved in an altercation. On one occasion he danced with customers while on duty. He frequently objected openly and profanely to mixing certain drinks that customers ordered. Sometimes Nichols would ignore the waitresses' requests for orders while he continued to engage in conversation with customers. His favorite routine when a customer ordered a beer was to open the bottle, hold it to his fly, place a finger in the bottle opening, make a hissing sound—pretending he was urinating—and then serve the beer to the customer.

Cunner received numerous complaints from the waitresses and customers about Nichols' behavior. At numerous times Cunner discussed with Nichols his objectionable actions and his resistance to her regime. She told him to reduce the profanity, but no improvement resulted. He denied making derogatory remarks about Cunner before customers and employees and did not respond to her request for cooperation. He denied making sexual advances to the waitresses. On February 25, 1973, she issued Nichols a written warning that he would be fired unless he stopped his practice of remaining at the lounge after his shift; Nichols continued to ignore the rule. Other employees had on occasion remained at the lounge while off duty, and profanity was not uncommon at the bar.

Matters came to a head in the summer of 1973. On June 24 Nichols complained to his union, Local 535, Culinary Workers, Bartenders and Hotel Service Employees, AFL–CIO. Cunner and the local business agent for the union discussed the problem that day at the

---

1. Culinary Workers, Bartenders and Hotel Service Employees, Local 535, AFL–CIO.

Holiday Inn. On June 25 Cunner gave Nichols the following written notice:

> "This will be the last notice given to you for your insubordination and laxity in your work. Our Company rules would be adhered to."

When she handed the notice she said:

> "I understand you contacted the Union. You are constantly doing this. I am not going to have this happen all the time."

On July 31 Nichols wrote a letter to his union and to the president of Servico, Inc., the parent company of the Holiday Inn of San Bernardino, complaining of the hours he had been forced to work by Cunner. On August 3 when Nichols reported for work Cunner discharged him, stating:

> "I understand that you wrote your Union and also Memphis. I am not going to have this anymore. You are a troublemaker. I am the Innkeeper and you are not."

Nichols charged his employer with discharging him for engaging in protected union activity. The administrative law judge, after hearing evidence, so found and ordered the employer to cease such actions, but he declined to order the employer to reinstate Nichols with back pay. He stated:

> "The lounge-restaurant work force at the Inn is small. If the restaurant and lounge business is to prosper, close cooperation between the bartender and the waitresses and a friendly, respectful attitude to and before the public by those employees is required. It is clear that Nichols' conduct during those 7 months met none of these standards. He was profane, lewd, disrespectful, uncooperative and disruptive, despite repeated warnings and pleas to change his ways and his attitude. It would not suit the purposes of the Act to direct his reinstatement."

The General Counsel to the NLRB filed objections with the Board to the judge's remedy. The Company did not object to either the finding of retaliatory firing or to the favorable remedy decision of the administrative law judge. The Board agreed with the finding of the employer's violation of 29 U.S.C. § 158. The Board, however, amended the administrative law judge's recommended remedy to provide for reinstatement with back pay, reasoning that otherwise Nichols would have a right but no remedy and relying on Cunner's failure to fire Nichols independently of his complaints to the union as an indication of Cunner's acceptance of his conduct. The Board seeks enforcement of its orders in this court. It raises the following issues:

1. Is there substantial evidence on the record as a whole in support of the Board's finding that Nichols was fired in retaliation for his protected union activities, in violation of section 8(a)(3) of the Act?

2. Did the Board abuse its discretion in ordering Nichols' reinstatement with back pay?

■ The Board contends that the employer's failure to object to the administrative law judge's finding of a retaliatory firing precludes a challenge in this court to that portion of the Board's decision. Under the applicable regulations, 29 C.F.R. §§ 102.46(h), 102.48(a), a party waives objections to findings and recommendations of the administrative law judge if he does not file objections thereto within specific time limits in 29 C.F.R. § 102.46. The governing statute, 29 U.S.C. § 160(e), section 10(e) of the National Labor Relations Act, states:

> "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused by extraordinary circumstance."

No extraordinary circumstances having been alleged, this court cannot consider respondent's assertion that there was not substantial evidence in support of the Board's finding of a retaliatory firing. NLRB v. Pacific Electrical Contractor's Association, 478 F.2d 853 (9th Cir. 1973) (per curiam); NLRB v. Jan Power, Inc., 421 F.2d 1058, 1061 (9th Cir. 1970).

The Board has authority to order reinstatement and back pay in order to effectuate the purposes of the National Labor Relations Act, section 10(c), 29 U.S.C. § 160(c). The Board has broad discretion in the choice of remedies. Golden State Bottling Co. v. NLRB, 414 U.S. 168, 181, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); NLRB v. W. B. Jones Lumber Co., 245 F.2d 388, 390 (9th Cir. 1957). The normal remedy of reinstatement and back pay gives meaning to the Act's guarantees.

The Board's discretion is not, however, absolute, and reinstatement is not always enforced even after a discriminatory discharge. No reinstatement should be ordered if the policies of the Act are not furthered by such an order. NLRB v. Big Three Industrial Gas & Equipment Co., 405 F.2d 1140, 1143 (5th Cir. 1969). The Tenth Circuit has found that the policies of the Act were not furthered by ordering reinstatement of an employee illegally fired who later confessed to stealing from his employer. NLRB v. Breitling, 378 F.2d 663 (10th Cir. 1967). The Fifth Circuit has declined to order reinstatement of an employee illegally fired who had accumulated traffic violations while working for his trucking company employer and could thus endanger the company's safety program, NLRB v. Big Three Industrial Gas & Equipment Co., supra, or who had threatened the president of the employer company with bodily harm in a premeditated manner, NLRB v. R. C. Can Co., 340 F.2d 433 (5th Cir. 1965). The Seventh Circuit has refused to order reinstatement of an employee illegally fired who had a disrespectful attitude towards his superior, made damaging statements to a customer of his employer, and made derogatory remarks about the personnel manager of his employer.

NLRB v. National Furniture Mfg. Co., 315 F.2d 280, 286–87 n. 7 (7th Cir. 1963).

This court has stated the general standard in this type of case to be:

" . . . the misconduct which will justify a court in refusing to enforce a Board order to rehire depends upon the degree and kind of the misconduct and each case must be decided on an ad hoc basis."

NLRB v. Miller Redwood Co., 407 F.2d 1366, 1370 n. 2 (9th Cir. 1969). A test which is useful to the particular facts of this case is "do the circumstances 'render it difficult for us to judicially enforce a renewal of a relationship that bids ill for all concerned'?" NLRB v. Yazoo Valley Electric Power Assoc., 405 F.2d 479, 480 (5th Cir. 1968), quoting, NLRB v. National Furniture Mfg. Co., supra, 315 F.2d at 286–87 n. 7. An employee may not seek to topple his supervisor from authority and then claim protection of the Act because his plan included the use of union grievance procedures. NLRB v. Red Top, Inc., 455 F.2d 721 (8th Cir. 1972). In this case Nichols was found to be engaged in a campaign to undermine and displace Cunner.[2] His behavior was uncooperative and disruptive of employee relations. Given the small size of the business and the necessity for cooperation among employees, it would be an impossible situation if Nichols were reinstated.

The Board distinguishes some of the above cases and other similar cases on the ground that the undesirable behavior of the employee was discovered after the firing and thus was not merged with the illegitimate retaliatory motive. The Board's argument is not valid. First, the cases do not place any weight on the timing of the employee's misconduct. Second, in NLRB v. Big Three Industrial

---

2. Counsel for the Board argued that the record did not support the administrative law judge's finding that Nichols was engaged in a campaign to undermine Cunner. Since the General Counsel did not challenge this finding before the Board it would appear that he would be bound to the same extent that the employer is bound by the finding of illegal firing which it did not oppose. The Board appears to concede that those findings not challenged by the General Counsel are binding on it. The regulations support this view. 29 C.F.R. §§ 102.-46(h), 102.48(a). At oral argument, counsel for the Board conceded that the findings of the administrative law judge characterizing Nichols' conduct were supported by the evidence.

Gas & Equipment Co., 405 F.2d 1140 (5th Cir. 1969), and apparently in NLRB v. National Furniture Mfg. Co., 315 F.2d 280 (7th Cir. 1963), most of the employee's undesirable activities were discovered by the employer prior to the illegal discharge.

The evidence here clearly shows that the charging employee was and is unfit for the job for all of the reasons recited. Reinstatement with back pay would not effectuate the policies of the Act. It would reward conduct both reprehensible in quality and egregious in scope. We reverse the portion of the Board's order which provides for the reinstatement of Nichols with back pay and deny enforcement thereof; we affirm the order which requires the Company to cease and desist from committing the unfair labor practices found and to post notices in conformity with this decision.