**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Harry MAGNUSEN, dba North Star Refrigerator Co., Respondent.**

**No. 74–1278.**

United States Court of Appeals, Ninth Circuit.

Sept. 19, 1975.

644

Howard Pearlstein, Atty., N.L.R.B., Washington, D.C., for petitioner.

Mary Ellen Berke (argued), Van Nuys, Cal., for respondent.

OPINION

Before TRASK, WALLACE and KENNEDY, Circuit Judges.

PER CURIAM:

The National Labor Relations Board seeks enforcement, pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), of an order of November 20, 1973, against Harry Magnusen d/b/a North Star Refrigerator Company. The Board found that the employer had committed various unfair labor practices in his effort to impede union organization activities at his plant. The Board ordered the employer to reinstate with back pay three employees, prime movers in the unionization campaign, whom he had fired, to cease the unfair practices, and to post notices of the Board's action.

The employer Magnusen manufactures commercial walk-in refrigerators at a small plant in Sun Valley, California, and installs them in businesses in the area. During the period in question there were approximately nine employees. Jack Holt, general foreman, was in charge of overall management of the plant's operation and supervision of all employees. Hector Padron, William Mann, and James Dyche were three of the firm's employees.

In October 1972 Padron began discussing with his coworkers the possibility of forming a union at the plant. Thereafter general foreman Holt became aware of the activity and began his own counter activities to oppose unionization. Padron, Mann, and Dyche, the three union activists, were terminated for "official reasons" which might well have been found pretextual in view of a threat Holt made against union sympathizers and the various inconsistent and contradictory reasons given for the terminations. On one occasion Holt told several employees during a conversation:

"I hope this union thing doesn't go through . . . . Harry [Magnusen, the employer,] can't stand it. We can't have anything like that. We will go out of business. I am not going to stand for any talk of it and I am not going to listen to anymore [sic] stories about Bill Mann. If I catch Bill Mann or any other son of a bitch talking about the union, they are going to be out the door." R.T. 168–69.

After termination of Padron, Mann, and Dyche, Padron filed a NLRB complaint protesting the alleged illegal termination of Padron and Mann. Later Dyche charged that he also was discharged to discourage union organization activities. The two cases were consolidated, and six days of hearings were held before an administrative law judge. The judge found that the employer had engaged in unfair labor practices by firing the three employees and by coercing employees through other means. He ordered reinstatement with back pay of Padron, Mann, and Dyche. He further ordered the employer to cease and desist from unlawfully interrogating employees on their union activities, from threatening employees with discharge, and from threatening layoffs and other work changes if a union were established. A notice to this effect was required to be posted. The NLRB affirmed and adopted this order, 207 NLRB No. 85 (1973). The Board now seeks enforcement of its order by this court.

■ At the hearings two very different versions were offered of the events surrounding and the motivation behind the terminations of the three employees and the other allegedly coercive actions by the employer. The administrative law judge chose not to credit the employer's various and at times conflicting stories. The NLRB's determination on credibility is not to be lightly disturbed, *NLRB v. International Longshoremen's & Warehousemen's Union & Local 27*, 514 F.2d 481 (9th Cir. 1975), especially when the finder of fact, as here, provides a written statement of reasons for choosing not to believe the employer's story. *See White Glove Building Maintenance, Inc. v. Brennan*, 518 F.2d 1271 (9th Cir. 1975).

■ It is clear that section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), prohibits an employer from discharging an employee because of his union activities or sympathies. *Santa Fe Drilling Co. v. NLRB*, 416 F.2d 725, 728 (9th Cir. 1966). Here it is clear that there was substantial evidence on the record as a whole in support of the Board's finding that the company violated section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), by terminating the employees and section 8(a)(1), 29 U.S.C. § 158(a)(1), by coercing its employees in an effort to prevent unionization. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ A question was properly raised about the enforcement of the order requiring reinstatement with back pay of Dyche.[1] At the hearing, while under oath, Dyche was questioned by the employer's counsel about an incident in which Dyche claimed on his time card and was paid for working through the night on a job in San Diego when he and his coworker allegedly slept in a motel. In response to repeated and unequivocal questions on this matter Dyche denied being paid for work he did not perform and denied staying in the motel with his coworker, although he finally admitted to staying in the motel. R.T. 193, 489–92, 818, 829. The record clearly discloses that Dyche lied on the stand and that he, in fact, did get paid for work he claimed but did not do and did stay in a San Diego motel with his coworker when he was supposed to be working. R.T. 565–68, 660–61, 829–30. In addition, following the hearing Dyche wrote the NLRB and others stating he "told several untruths" while on the stand and admitting that he had stayed at the motel with his

---

1. The administrative law judge who heard the testimony noted that the employer made much of the incident where the time card of Dyche indicated he had worked through the night when in fact he had taken time off for sleep. He points out that respondent conceded that this was not discovered until after Dyche was fired and thus could not "have figured in the discharge decision." As such, it would not constitute a defense to the sections 8(a)(1) and (3) violations. However, different considerations may prevail on the issue of reinstatement and back pay. *NLRB v. Apico Inns of California, Inc.,* 512 F.2d 1171, 1175 (9th Cir. 1975).

coworker on the night in question. C.T. 65.[2]

■ On these facts we decline to enforce the Board's order requiring reinstatement with backpay of Dyche. "Padding" of work hours is equivalent to the theft of money. To require reinstatement with backpay of an employee who stole from his employer[3] and who severely impeded the vital fact-finding process by repeated lying "would not effectuate the policies of the Act. . . [and] would reward conduct both reprehensible in quality and egregious in scope."[4] NLRB v. Apico Inns of California, Inc., 512 F.2d 1171, 1176 (9th Cir. 1975); NLRB v. Commonwealth Foods, Inc., 506 F.2d 1065 (4th Cir. 1974) (employees illegally fired should not be reinstated if on rehearing the Board determines that they had been engaging in theft from their employer); NLRB v. Breitling, 378 F.2d 663 (10th Cir. 1967) (employee illegally fired who later confessed to stealing from employer should not be reinstated); NLRB v. Big Three Welding Equipment Co., 359 F.2d 77 (5th Cir. 1966) (employees illegally fired who pilfered from their employer should not be reinstated); NLRB v. Coca-Cola Bottling Co., 333 F.2d 181, 185 (7th Cir. 1964) (even if employee had been illegally fired, he should not have been reinstated because of a pattern of falsification and deceit during employment and false testimony at the hearing); Iowa Beef Packers, Inc. v. NLRB, 331 F.2d 176, 184–85 (8th Cir. 1964) (employee illegally fired who gave false testimony at hearing and in his complaint should not be reinstated). In addition, it would demean the Board and this court to provide reinstatement with backpay to one who did so much to subvert the factfinding processes.

■ An additional ground for not granting reinstatement with backpay is that in his letter to the NLRB and others in which he admitted the motel incident and other "untruths," Dyche also sought to withdraw his complaint. He specifically disavowed any intention to accept backpay. C.T. 65. When an employee disavows the remedy of reinstatement with backpay the Board should not order it. NLRB v. Coletti Color Prints, Inc., 387 F.2d 298, 306 (2d Cir. 1967); Colonie Fibre Co. v. NLRB, 163 F.2d 65, 70 (2d Cir. 1947).

The administrative law judge's rulings on various evidentiary questions, which the employer claims were erroneous, were within the judge's discretionary authority to manage the presentation of evidence.

Therefore, with the exception of that part of the order requiring the reinstatement with back pay of Dyche, the Board's order is enforced in its entirety.

---

2. This letter was made a part of the record on appeal. Since both parties treat it as properly authenticated, we do also.

3. The Board contends that the employer cannot argue that Dyche is unfit for reinstatement because the coworker who also padded his hours in the motel incident was not fired. This argument ignores the fact that Dyche was the senior worker and his coworker was new on the job; the veteran employee took the lead in that incident and had a greater responsibility because of his position. Furthermore, the coworker admitted on the stand on direct examination that he had padded the hours; Dyche, in contrast, continued to lie. Finally, in considering whether to order reinstatement of one employee, the employer alleged condonement of misconduct by other employees is only one consideration. There must also be considered the harmful effect on employee behavior if an employee who has seriously misbehaved is reinstated. See NLRB v. Big Three Welding Equipment Co., 359 F.2d 77, 83–84 (5th Cir. 1966).

4. The employer's contention that Padron and Mann should not be reinstated because of alleged misconduct is without merit. Padron's alleged misbehavior was that he used company time to conduct his union activities. Mann allegedly was insubordinate at times, violated safety rules on occasion, and talked too much on the job. These actions, if true, do not amount to the kind of flagrant misbehavior—rendering the employee clearly unfit for the job—that precludes reinstatement lest the purposes of the National Labor Relations Act be undermined.