**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WESTERN CLINICAL LABORATORY, INC., Respondent.**

No. 76–3212.

United States Court of Appeals, Ninth Circuit.

March 2, 1978.

Rehearing and Rehearing En Banc Denied June 6, 1978.

458

Elliott Moore, Washington, D. C., for appellant-petitioner.

Ronald J. Logar, Reno, Nev., for appellee-respondent.

Before HUFSTEDLER and SNEED, Circuit Judges, and RENFREW,* District Judge.

PER CURIAM:

The National Labor Relations Board ("NLRB" or "Board") has petitioned, pursuant to § 10(e), 29 U.S.C. § 160(e), of the National Labor Relations Act as amended ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, for enforcement of its order against Western Clinical Laboratory, Inc. ("WCL"). For the reasons set forth below, we find that there is substantial evidence on the record as a whole to support the determinations of the Board.

* Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

The NLRB found that respondent violated

(1) § 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), by unlawfully interrogating its employees about union sympathies, by threatening that collective activity of its employees would be futile, by threatening the job security of an employee because of his union adherence, by unlawfully soliciting grievances from its employees and promising correction in order to undermine adherence to the union, and by unlawfully attempting to cause another employer to fire an employee who testified for the Board's General Counsel at a hearing before an administrative law judge ("ALJ");

(2) § 8(a)(1) and (3) by issuing poor work evaluations to three employees because of their union involvement and by constructively discharging one of those employees for the same reason; and

(3) § 8(a)(1), (3), and (4) by requiring an employee to use vacation time for part of his attendance under subpoena at the administrative hearing despite the employee's desire to take leave without pay for those days.

I

There is substantial evidence on the record as a whole to support these determinations. On July 1, 1974, WCL took over a laboratory in the Roseville Community Hospital in Roseville, California. Despite WCL's agreement to retain all former laboratory personnel and to maintain established working conditions and benefits, the technicians at the laboratory were concerned about the effect of WCL's take-over and, among other things, they formed a union to protect their interests.

The unfair labor practice charges arose from various dealings between the local WCL officials and the employees. As is usually the case, the employers and employees remember the events differently, and the resolution of the unfair labor practice charges depends primarily on factual determinations. The ALJ held a lengthy hearing and made a conscientious effort to evaluate the charges and counter-charges. There is certainly substantial evidence that the director of the laboratory, Dr. William Keenan, had significant anti-union bias and that this bias affected his conduct during interviews with various employees, his official evaluations of the work of various employees, and his efforts to cause the removal of a nurse employed by the Roseville Community Hospital who testified for the General Counsel at the administrative hearing. Although WCL introduced contrary evidence, it is primarily for the ALJ to weigh conflicting evidence and to judge the credibility of witnesses. This court can interfere with his credibility determinations "only if a clear preponderance of the evidence convinces us that they are incorrect," *NLRB v. R. O. Pyle Roofing Co.*, 560 F.2d 1370 (9th Cir. 1977), and there is no clear preponderance of contrary evidence here.

 The record as a whole contains substantial evidence that Young, the president of the union, was fired for his union activities, not for legitimate business purposes related to his competence. Keenan's statement to Young that he should have expected poor work evaluations after he joined the union, the lack of foundation for two of Keenan's specific criticisms of Young's work, the 1973 positive handwritten evaluation of Young by the chief technologist, the recommendation of Young by the emergency room staff including at least one physician, and the singling out of Young for the test that he failed combine to establish substantial evidence that Young's constructive discharge, as well as his poor evaluation, was discriminatorily motivated. Discharge of an employee for whom the employer has a justifiable ground for discharge constitutes a violation of § 8(a)(3) if the employer's motivation is in fact discriminatory. *NLRB v. Central Press of California*, 527 F.2d 1156 (9th Cir. 1975); *NLRB v. Ayer Lar Sanitarium*, 436 F.2d 45, 50 (9th Cir. 1970); *Aeronca Mfg. Co. v. NLRB*, 385 F.2d 724, 727 (9th Cir. 1967). *See also Oil, Chemical & Atomic Workers Union v. NLRB*, 178 U.S.App.D.C. 278, 293, 547 F.2d 575, 590 (1976).

The Board also has substantial evidence on the record as a whole to support its determination that WCL failed to give one of its employees, James Cupler, a reasonable opportunity to take leave without pay rather than use accrued vacation time for his attendance under subpoena at the hearing before the ALJ. The Board could reasonably find that this failure interfered with Cupler's right under § 7 of the NLRA, 29 U.S.C. § 157, to testify at a Board proceeding, *Textile Workers Union (Personal Products Corp.)*, 108 NLRB 743, 749 (1954) (testifying is protected activity under § 7); *Sanco Piece Dye Works, Inc.*, 38 NLRB 690, 726 (1942) (same), and with the Board's ability to investigate fully and adequately the allegations of unfair labor practices.

## II

[4] The troublesome issue in this case is whether the Board's order requiring Young's reinstatement should be enforced under all of the circumstances of this case. Once an illegal discharge has been established, the reinstatement of the injured employee is a common remedy chosen by the Board to effectuate the remedial policies of the National Labor Relations Act. However, reinstatement is not warranted when that remedy would not effectuate the purposes of the National Labor Relations Act, and the policies of the Act do not require the reinstatement of employees who are not fit to carry out the responsibilities of the jobs from which they were illegally discharged. *Cf.* § 10(c) ("No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged for cause.").

Thus, the courts, as well as the Board, have refused reinstatement of an employee unlawfully discharged when the employee was guilty of unlawful or offensive conduct, which would bid ill for all concerned if renewal of the relationship were compelled. *E. g., NLRB v. Magnusen*, 523 F.2d 643, 645–46 (9th Cir. 1975) (employee lied on stand, falsified time cards); *NLRB v. Apico Inns of California, Inc.*, 512 F.2d 1171, 1175–76 (9th Cir. 1975) (employee regularly insulted manager in front of customers and engaged in other "reprehensible" conduct); *NLRB v. Commonwealth Foods, Inc. (West End)*, 506 F.2d 1065, 1067 (4th Cir. 1974) (employee failed polygraph, admitted stealing from employer); *NLRB v. Breitling*, 378 F.2d 663 (10th Cir. 1967) (employee stole from employer); *NLRB v. Big Three Welding Equipment Co.*, 359 F.2d 77, 82–84 (5th Cir. 1966) (employee admitted pilferage); *NLRB v. R. C. Can Co.*, 340 F.2d 433 (5th Cir. 1965) (employee threatened president of employer with bodily harm); *NLRB v. Coca-Cola Bottling Co.*, 333 F.2d 181, 185 (7th Cir. 1964).

The principle of these cases applies with even greater force when the unlawfully discharged employee is incompetent and is employed in a sensitive position affecting health care. *Cf. NLRB v. Huntington Hospital, Inc.*, 550 F.2d 921, 924–25 & n. 5 (4th Cir. 1977) (unlawful conduct of hospital employee off the job suggested unfitness to work in hospital, although hospital work record was good); *NLRB v. Big Three Industrial Gas & Equipment Co.*, 405 F.2d 1140, 1142–43 (5th Cir. 1969) (reinstatement denied truck driver whose bad record of traffic violations was incompatible with safety on the public highways).

The evidence directed to the question whether Young was incompetent was conflicting. Respondent presented testimony of Young's fellow-laboratory worker Lee, the evaluations of Young prepared by his supervisors, Drs. Heuners, Oda, and Williamson, and the results of a test, conducted in the office of Dr. Keenan, to test Young's ability to examine and identify common blood slides. Lee, who worked the shift with Young, testified that Young was unable to perform many of the routine laboratory functions and that he tried to limit his work to hemotology. Lee said that he covered for Young's deficiencies, doing the blood banking and other tests, which Young was not competent to perform. Lee also testified that Young would panic when things got busy and that he would be unable to handle multiple assignments. Young's supervisors rated him "average" in

eight categories of laboratory work, "below average" in nine, and "unsatisfactory" in six. On the blood slide tests, Young scored very poorly. On the other hand, counter-evidence was presented both with respect to Young's work performance and, more pertinently in such an 8(a)(3) action, the motivation for his discharge. Several months before the evaluations upon which respondent relied to justify Young's discharge, Young's performance had been evaluated by Williamson. Young received the best rating in every category, and his "dedication to good patient care," "leadership capabilities," and "participation in continued education" were pronounced his "major strong points." Nothing was written under the heading of "major weak points." Williamson added this laudatory comment about Young: "Monty could better utilize his capabilities if he were given the official job as p. m. supervisor. He has been acting in that capacity and has done an outstanding job for the hospital laboratory." Evidence was also introduced discrediting the credibility of the poor performance reports, primarily upon the ground that those reports were likewise motivated by anti-union animus.

The ALJ resolved the credibility questions in Young's favor. However, the ALJ was primarily, if not entirely, examining the evidence for the purpose of deciding whether the discharge was motivated by anti-union animus rather than by legal causes. The ALJ made no specific finding on the competency question. The Board did not do so either. Indeed, the Board did not address itself to the evidence before the ALJ for the purpose of deciding whether reinstatement was appropriate. A remand to the Board is thus necessary to permit the Board to decide the credibility questions and to resolve the conflicts in the evidence relating to Young's competency.

In absence of a Board finding on the competency question, supported by substantial evidence in the record as a whole, we decline to enforce the reinstatement order. In our view, promotion of the beneficial policies of the National Labor Relations Act attributable to reinstatement of an illegally discharged employee cannot take precedence over the public interests in being free from incompetent workmanship by a hospital employee, whose work, if incompetently done, would jeopardize the health and lives of patients. Both the Board and we must be very hesitant to compel reinstatement of an illegally discharged employee if the credited evidence leaves substantial doubt that the employee is competent to perform his job when his work directly affects the health and safety of the persons whom his employer serves.

We recognize that the "Board's power to order the reinstatement of an unlawfully discharged employee is 'a broad discretionary one, subject to limited judicial review.' *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964)." *D'Youville Manor, Lowell, Mass., Inc. v. NLRB*, 526 F.2d 3, 7 (1st Cir. 1975) (order for reinstatement of orderly in nursing home enforced); *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 539, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); *NLRB v. Apico Inns of California, Inc., supra*, 512 F.2d at 1175; see *Evergreen Helicopters, Inc. v. NLRB*, 564 F.2d 1293, 1294 (9th Cir. 1977). We also recognize that in the health care context as well as in industrial settings, the Board must have the means to deal with employers who invoke business justifications as a pretext for anti-union conduct. See *NLRB v. Fairview Hospital*, 443 F.2d 1217 (7th Cir. 1971) (employer who refused to obey court and Board order to reinstate psychiatric orderly on ground that orderly unfit held in contempt). Nevertheless, reinstatement of incompetent employees in the health care field does not effectuate the policies of the Act.

Accommodation of the often conflicting interests of employers and employees is difficult in any employment context, and labor relations in the health care field present special problems which the Board and the courts are still struggling to resolve. *Compare Lutheran Hospital of Milwaukee, Inc. v. NLRB*, 564 F.2d 208 (7th Cir. 1977) (Board's union solicitation rules for hospitals upheld), and *NLRB v. Beth Israel Hos-*

*pital,* 554 F.2d 477 (1st Cir. 1977) (same), *cert. granted,* —— U.S. ——, 98 S.Ct. 764, 54 L.Ed.2d 780 (1978); *with St. John's Hospital & School of Nursing v. NLRB,* 557 F.2d 1368 (10th Cir. 1977) (same rules struck down). "It is the Board's function to determine the applicability of the National Labor Relations Act to working conditions in a particular industry in light of the special conditions present in that industry . . . ." *Lutheran Hospital of Milwaukee, Inc. v. NLRB, supra,* 564 F.2d at 214. But we do not infringe on this well-settled discretion of the Board when we require it to make a finding that an employee is fit before it orders his reinstatement, especially to a position which affects the health and safety of others.

We vacate that portion of the Board's order reinstating Young and remand that portion of the cause to the Board for further proceedings consistent with the views herein expressed. The remaining portions of the order are enforced.