## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## MUTUAL MAINTENANCE SERVICE CO., INC., Respondent.

### No. 79–2343.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1980.

Decided Sept. 17, 1980.

Rehearing and Rehearing En Banc Denied Dec. 23, 1980.

Mendelssohn McLean, N.L.R.B., Washington, D. C., for petitioner.

Sidney M. Libit, Chicago, Ill., for respondent.

Before CUMMINGS and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

The issues in this appeal are whether the Board's findings that Respondent violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act are supported by substantial evidence, and whether the remedies employed by the Board are appropriate. The Board seeks enforcement of its order requiring Respondent to cease and desist from the unlawful practices which it presently engages in; to post notices to employees informing them of Respondent's contract with the Union; and to reinstate, with back pay, a discharged employee. We enforce the Board's cease and desist order and that portion of the order relating to the posting of appropriate notices. Because of certain unlawful practices engaged in by the discharged employee, however, we deny enforcement of that portion of the order which requires reinstatement with back pay.

Respondent, Mutual Maintenance Service Co., Inc., provides janitorial services to commercial establishments in the Chicago area. The management of the business is conducted by the principal owners, Bernard Moschell and Stanley Rosenbloom, who serve as president and vice–president respectively; Ted Palka, a general manager; and several employee supervisors at each job site. Moschell and Rosenbloom handle the financial aspects of the business; disbursing funds, securing new accounts, etc. The hiring and promotion of employees and overall supervision of work is handled by Palka.

In April of 1977 Roman Chowaniec went to Ted Palka seeking employment. Prior to that time Chowaniec had worked for Respondent on a part–time basis. At first, Palka told Chowaniec that there were no openings. Later, Palka and Chowaniec discussed taking a trip to Poland together. Chowaniec told Palka that if he could find work for a short period of time, he could join Palka on the trip to Poland. Chowaniec was collecting unemployment compensation at the time, and he informed Palka of this. While it is not clear who initiated the scheme, the record is clear that Palka gave Chowaniec a job under a different name so that Chowaniec could continue to receive unemployment compensation. Chowaniec used the social security card of Kazimierz Motyka when he went to work for Respondent in April of 1977. He received his unemployment benefits under his own name. Chowaniec performed janitorial work at the Dialysis Center from 11:00 p. m. to 6:00 a. m. for Respondent. In mid–May of 1977, Chowaniec accompanied Palka to Poland.

Chowaniec testified that on several occasions after returning to work he requested that Palka change his name on the company records to his real name. However, no change was made and Chowaniec continued to receive checks made out to Kazimierz Motyka.

In November of 1977, Palka assigned Chowaniec to an additional shift at the Marshall Field store at Water Tower Place. That shift was from 12:00 noon to 6:00 p. m., six days a week. Chowaniec worked at the second job under his own name. This continued for several weeks until Chowaniec complained to Palka that he could not continue to work both jobs. Shortly thereafter, a replacement was found for Chowaniec at the Dialysis Center. Thereafter, Chowaniec worked only under his own name, and only at the Marshall Field store at Water Tower Place. Chowaniec's unemployment benefits ceased around the time he began working at Marshall Field's. It is unclear from the record whether the benefits ceased as a result of his securing a job, or simply expired due to the time limitations for receipt of those benefits.[1]

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. On cross–examination Respondent attempted to show that the latter was the reason Chowan-

During the entire period that Chowaniec was employed by Respondent, Rosenbloom signed all payroll checks. He did not personally distribute the checks. Chowaniec would normally come to the office and collect his payroll check from Rosenbloom's secretary. During the brief period that Chowaniec was working under two names, he would collect two checks, one made out to Roman Chowaniec, the other to Kazimierz Motyka. Rosenbloom would occasionally see Chowaniec picking up his check; however, he testified that he was not aware of Chowaniec's scheme until January of 1978, shortly before Chowaniec was discharged.

Chowaniec received a wage rate of $3.50 per hour while working for Respondent. During that time Respondent was a party to a collective bargaining agreement with the Service Employees' International Union, Local 25 (the Union). The agreement in force at that time was entered into in 1976. Respondent had entered into similar bargaining agreements with the union as far back at 1970. The minimum hourly wage under the collective bargaining agreement was $4.60.

Respondent sought to establish the existence of an addendum covering the establishments at which Chowaniec worked. Under this addendum Respondent would have been exempted from the provisions of the agreement. However, the Administrative Law Judge (hereinafter referred to as A.L.J.) rejected this contention and found that the agreement was in effect during the time Chowaniec was employed by Respondent.

In January of 1978 Chowaniec first learned of the higher wages available to Union members. On January 24, 1978, Chowaniec went to the Union office and spoke with Peter Piotrowski, a business representative for Local 25. Piotrowski informed him that Respondent was under contract with the Union, and that if Chowaniec became a member he would be eligible for the higher wages. Chowaniec signed a membership card and took several blank cards with him to distribute to fellow employees. At no time had Chowaniec been informed of the collective bargaining agreement by his employer.

The following day Chowaniec passed out union membership cards to his fellow employees. Shortly thereafter he was contacted at home by Palka who threatened to discharge him if he continued to solicit employees to join the union. Palka later spoke with several other employees and threatened them with discharge. Palka contacted Chowaniec on several subsequent occasions and threatened him with discharge if he continued to solicit employees for union membership.[2]

On January 24, 1978, Linda Palmer, personnel manager of the Dialysis Center, sent a letter to Respondent terminating their contract in 30 days. Palmer testified that the reason for the termination was that the work at the Dialysis Center was unsatisfactory. Rosenbloom and Palka testified that they informed Chowaniec about the complaints on several occasions, and that they warned him that unless the work improved he would be discharged. These conversations allegedly took place at the Company office when Chowaniec picked up his check and at the job. Chowaniec denied that there were any such complaints about the quality of his work. The A.L.J. found the testimony of Chowaniec to be more credible than that of Rosenbloom and Palka.

On February 20, 1978, Chowaniec was contacted at home and told to report to the Company office. He met Palka at the office and was told that his work was not satisfactory and that he need not show up for work any more.

On February 24, 1978, the Union filed a charge with the Board alleging that Chowaniec's firing was the result of union ac-

iec ceased receiving benefits. However, the record is not conclusive as to either basis, and the Administrative Law Judge made no findings on this point.

2. Palka denied making these threats. However, the A.L.J. credited Chowaniec's testimony recounting these threats and rejected Palka's denials as lacking credibility.

tivity. The Union made several attempts to have Chowaniec reinstated, and he did work for Respondent on several subsequent occasions. However, Respondent would only offer Chowaniec work at O'Hare Airport, to which he had no means of transportation. Evidence before the A.L.J. showed that Respondent did hire employees to work at the Marshall Field store between February and May of 1978, the period during which Chowaniec sought reinstatement.

In the proceeding before the A.L.J., Respondent sought to prove that Chowaniec was discharged for unsatisfactory work, as well as for his fraudulent use of another name and social security number. However, the testimony of Ms. Palmer of the Dialysis Center belied Respondent's contention. Ms. Palmer testified that she had complained about the work at the Dialysis Center since Respondent received the account in late 1976, well before Chowaniec was employed by Respondent. The sequence of events also suggested that the complaints from the Dialysis Center were a pretext for Chowaniec's discharge. Chowaniec was not working at the Dialysis Center when he was discharged on February 20, 1978. Respondent was notified of the termination of the Dialysis Center account almost one month before Chowaniec's discharge.

At the conclusion of the General Counsel's presentation of evidence, the A.L.J. considered the effect of Chowaniec's fraudulent conduct on this case. He inquired of the General Counsel whether, assuming the discharge was for union activity, reinstatement might not be inappropriate in light of Chowaniec's actions. At the conclusion of the hearing, the A.L.J. alluded again to consideration of Chowaniec's actions in fashioning a remedy.

On May 3, 1979, the A.L.J. entered extensive findings of fact and conclusions of law.

He resolved the conflicting testimony by concluding that Chowaniec was the more believable witness, and credited his testimony when it was in conflict with the testimony of Rosenbloom or Palka. The A.L.J. found that Chowaniec was discharged as a result of his union activity. The contention that the discharge was based on unsatisfactory performance was dismissed as pretextual. The A.L.J. found that Respondent had never been offered reinstatement at his old job at the Marshall Field store, though vacancies did exist at that location. The A.L.J. ordered that Respondent cease and desist from further anti–union conduct, and post appropriate notices–in English and in Polish–informing employees of the bargaining agreement in effect with the union. On the question of whether reinstatement with back pay was appropriate, he concluded:

> Chowaniec's employment with Respondent under two names and his collection of· unemployment compensation while working for Respondent does not disqualify him from reinstatement.[3]

The A.L.J. also took Chowaniec's actions into account in determining credibility. However, he concluded the collection of unemployment while in the employ of Respondent "does not detract from his credibility as a witness."[4]

Respondent excepted to the A.L.J.'s credibility determination. The Board, however, affirmed the findings and conclusions of the A.L.J. and adopted his order with minor modifications.[5]

## THE BOARD'S FINDING

■ The question of whether Chowaniec was discharged for engaging in protected activity is a question of fact. The Board's resolution of such factual issues will not be overturned if supported by substantial evidence in the record as a whole 29 U.S.C.

3. N.L.R.B. Administrative Law Judge Order, May 3, 1979, p. 14.

4. Id. at p. 4.

5. The A.L.J. ordered Respondent to, among other things, cease and desist from "[i]n any

other manner, interfering with, restraining or coercing its employees in the exercise of the rights under Section 7 of the Act." The Board substituted narrower language restraining Respondent from interfering with employee's Section 7 rights "in any like manner."

§ 160(e). *Universal Camera Corp. v. N.L. R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Even when a reviewing Court would make a different finding as to the employer's motivation for discharging an employee, the Board's finding must stand so long as there is substantial evidence in support of the Board's finding. *N.L.R.B. v. Gogin*, 575 F.2d 596, 601 (7th Cir. 1978).

■ The Board's finding that Chowaniec was discharged for engaging in protected activity is supported by substantial evidence. Chowaniec's testimony describing the circumstances surrounding his discharge, the impeachment of Rosenbloom's testimony that the discharge was motivated by unsatisfactory performance at the Dialysis Center; and the corroboration of Chowaniec's testimony by union officials and fellow employees, is sufficient to meet the substantial evidence test. We, therefore, affirm the Board's finding that Chowaniec's discharge was discriminatorily motivated in violation of Section 8(a)(3), and ·that the discharge served to interfere with, and restrain employees in the exercise of their Section 7 rights.[6]

### THE APPROPRIATENESS OF THE BOARD'S REMEDIES

■ Congress has entrusted the Labor Board with the authority to enforce the National Labor Relations Act and to effectuate the policies contained therein. See 29 U.S.C. § 151. To that end the Board may fashion remedies appropriate to protect employee rights, and seek enforcement of those remedies in this Court. *See N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 266; 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975). The Board's order requiring Respondent to cease and desist from similar unfair labor practices in the future is appropriate in light of Respondent's actions in the instant case. The posting of notices in Polish as well as in English will inform employees of the availability of union membership and representation, so that they will have a meaningful opportunity to exercise their Section 7 rights. These remedies are consistent with the Board's findings of fact and we enforce those portions of the A.L.J.'s order, as adopted and modified by the Board.

■ The portion of the Board's order which requires reinstatement of Roman Chowaniec is more troublesome.[7] While the Board has broad discretion in its choice of remedies, that discretion is not absolute. *N.L.R.B. v. Apico Inns of California, Inc.*, 512 F.2d 1171, 1175 (9th Cir. 1975). An employee who is unlawfully discharged is not automatically entitled to reinstatement with back pay. *Iowa Beef Packers, Inc. v. N.L.R.B.*, 331 F.2d 176, 185 (8th Cir. 1964); *N.L.R.B. v. National Furniture Manufacturing Co.*, 315 F.2d 280, 286 (7th Cir. 1963). This Court, and the Courts of other Circuits, have consistently declined to order reinstatement of an employee who has engaged in fraudulent or unlawful conduct. *N.L.R.B. v. Coca Cola Bottling Co.*, 333 F.2d ·181, 185 (7th Cir. 1964); *N.L.R.B. v. Magnusen*, 523 F.2d 643, 646 (9th Cir. 1975); *N.L.R.B. v. Commonwealth Foods, Inc.*, 506 F.2d 1065, 1068 (4th Cir. 1974); *N.L.R.B. v. Breitling*, 378 F.2d 663 (10th Cir. 1967); *N.L.R.B. v. Big Three Welding Equipment Co.*, 359 F.2d 77 (5th Cir. 1966).

■ An employee who engages in a scheme to defraud the Federal Government and his former employer of unemployment compensation benefits should not be reinstated. To do otherwise would permit violations of Federal Law to be totally ignored

---

**6.** Section 7 of the Act, 29 U.S.C. § 157 provides:

Employees shall have the right to self–organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

**7.** Section 2(a) A.L.J.'s order of May 3, 1979, adopted by the Board on Aug. 14, 1979.

in the labor law context. We, therefore, decline to enforce that portion of the Board's order which would require Chowaniec's reinstatement.

The Board argues that the reinstatement is somehow appropriate notwithstanding Chowaniec's actions, because Respondent's manager, Ted Palka, was aware of and even encouraged the fraudulent scheme. The Board suggests that Respondent "induc[ed] their employees to evade unemployment compensation regulations," and that to deny reinstatement would somehow "insulate" Respondent. First, we note that Chowaniec openly admitted committing a fraud in his testimony before the A.L.J. The fact that an agent of Respondent also participated in that fraud does not mitigate Chowaniec's culpability. Second, declining to reinstate Chowaniec will in no way insulate Respondent or any of its agents.[8]

The Board's treatment of this entire incident is troubling. The Board seeks to limit the consideration of Chowaniec's actions to credibility determinations. The A.L.J. considered each witness' involvement in the fraudulent scheme and made credibility determinations based on his observation of the witnesses. We do not disturb those credibility determinations as they are best left to the trier of fact. *See Electri–Flex Co. v. N.L.R.B.*, 570 F.2d 1327, 1331–1332 (7th Cir. 1978). Such fraudulent conduct on the part of an employee, however, is relevant to more than just credibility determinations. The Board's cavalier treatment of this matter, in the face of ample precedent to the contrary, is simply inexcusable. The Board is reminded that the National Labor Relations Act must not be enforced in a vacuum. Apparent violations of other laws must be considered in fashioning appropriate relief for violations of the Act.

Accordingly, Enforcement of the Board's order is Granted, except for that portion of the order relating to reinstatement with back pay, for which enforcement is Denied.

**8.** Indeed, in the event of a subsequent criminal investigation neither Palka nor any other agent

of Respondent would be immune from prosecution.