**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**R. C. CAN COMPANY, Respondent.**

**No. 21326.**

United States Court of Appeals Fifth Circuit.

Jan. 22, 1965.

Hans J. Lehman, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Asso. Gen. Counsel, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Allison W. Brown, Jr., Attorney, N. L. R. B., for petitioner.

Karl H. Mueller, Harold E. Mueller, Mueller & Mueller, Fort Worth, Tex., for respondent.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

The Board seeks enforcement of its order finding violations by the respondent of Sections 8(a) (3), (4), (1) and (5) of the National Labor Relations Act and requiring the reinstatement of an employee Scott. We think that there would be no profit in our reciting the facts upon which the Board could properly find that the company violated Section 8(a) (1) of the Act by threatening employees with loss of benefits and layoffs or discharges in order to discourage activities on behalf of the Union and in failing to bargain in good faith with

the Union in violation of Sections 8(a) (5) and (1) of the Act. We discuss more fully the charge, sustained by the Board, that the company violated Sections 8(a) (3), (4) and (1) of the Act by laying off and failing to reinstate Milford Scott because of his leadership in the Union and because he had given testimony in a prior Board proceeding against the company.

■ Scott was a valuable employee of the company. He held a semi-skilled position as a "convolute setup man." A part of his duties was maintenance and adjustment of the machines on which he worked, together with a stitching machine and a threader. On occasion his duties included welding and the making of parts in the machine shop. It is not disputed that the company knew Scott to be a leader of the Union. On April 26, 1962, the company announced a layoff on account of reduction in work. Under the company policy, the senior employee was permitted to "bump" a junior employee provided the senior was able to perform the work of the bumped employee. Here an employee named Murphy, who had not been trained in the convolute setup work or in maintenance and repair work, was permitted to bump Scott. The company gave Murphy some six weeks training in his new duties as to maintenance and he also received frequent assistance from a company foreman in order to perform the work that Scott had previously performed. Scott was given no opportunity to bump any of the three employees who had less seniority than he did. There was credible evidence from which the Board could find that there had been a predetermined effort to get rid of Scott. We conclude that there was sufficient basis for the Board's determination that Scott's layoff resulted from the improper motive of discriminating against him by reason of his having given testimony against the company. The Board's findings, therefore, of violations under Sections 8(a) (1), (3) and (4) of the Act as to its layoff of Scott are fully justified.

We come next to the part of the enforcement order that required the company to reemploy Scott. This gives us considerable concern as it did the Examiner and the dissenting member of the Board because of Scott's admitted threat against the company's manager Smith.

As stated by the Examiner,

"There is no dispute as to the facts, Scott having admitted what occurred. On the day in question Scott drove to the plant by himself and asked to see Plant Manager Smith. When advised that Smith would see him, he requested and was granted permission to be accompanied by employees Huffman and Brewer, these being the members of the bargaining committee. After a few minutes wait in the outer office, and without Scott's telling the others the purpose of his visit, all three were ushered into Smith's office. What happened then can best be described in Scott's own words:

"'And the first thing I said to Mr. Smith was, I asked him if he had guts enough to talk to me alone. And he said he didn't have anything to talk to me about since the lay-off. And at that time I said I thought I had a hell of a lot to talk about. And in response he told me that I couldn't curse in his office like that and to come on out. And at that time I went outside and waited, and Mr. Smith stayed inside. And then I went back [in about 5 minutes]. * * * I came back and asked him if he didn't have enough guts to finish what he started. And he again stated he didn't have anything to say since I had been laid off. And I believe I stated then that it may not be that night or the next night, but I would kick hell out of him the first chance I got.'

"Smith's version of the above incident was substantially the same as Scott's but he elaborated to say

that Scott prefaced his outburst upon returning to the office the second time by stating that he wanted 'everybody to hear this,' including Huffman and Brewer who were still present. Smith's testimony to this effect is credited."

Commenting on this admitted course of conduct the Examiner stated,

"The General Counsel contends that Scott's conduct on May 7 was not serious as to render him unfit for future employment or to constitute a bar to his reinstatement. I disagree. The cases cited by the General Counsel in support of his position are readily distinguishable on their facts. Except for actual physical assault, I can perceive of no conduct more serious than Scott's threat of physical violence made to the head of the Company in the presence of two employees. Indeed, since nothing of a provocative nature occurred upon his return to the plant one might reasonably conclude that Scott's acts and conduct on this occasion were deliberate and premeditated. Granted that Scott may have been the victim of an unfair labor practice, a lawful remedy was provided therefor under the Act. In fact such remedy already had been elected when the Union filed a charge on his behalf on May 1. Accordingly, and in view of all the foregoing, I shall recommend that Respondent not be required to reinstate Scott."

The Board, calling Scott's threat "spontaneous utterance under the extreme provocation" overruled the Examiner's recommendation with respect to the reemployment of Scott and in its order required that Scott should be reemployed. In doing so the Board relied upon the decision by this Court, NLRB v. Georgia Rug Mill, 5 Cir., 308 F.2d 89. Member Rogers of the Board dissented from this part of the Board's order.

As the Examiner said, the Georgia Rug Mill case can be distinguished. In the first place as pointed out by this Court in that decision, the "insubordination is only the last of four explanations the Company gave at different times for [the employees] discharge. * * * When an employer shifts position several times in explaining why an employee has been fired, his own case is weakened, and the Board's conclusion that the true reason was for union activity is correspondingly strengthened. See N. L. R. B. v. International Furniture Co., 5th Cir.1952, 199 F.2d 648." The opinion of this Court did not discuss the separate problem of requiring the reinstatement of the employee by reason of misconduct.

Moreover, here, the trial Examiner, who had the duty and opportunity to observe Scott on the witness stand and to observe plant manager Smith, and who was thus able to weigh the effect that such a threat by Scott might have upon Smith when made in the presence of several other employees of the company, concluded that Smith's acts and conduct "were deliberate and premeditated" causing him to recommend that respondent "not be required to reinstate Scott." In the Georgia Rug Mill case, this Court noted the significance of a conflict between the Examiner's report and the Board's determination, concluding that where observation of the witnesses was of significance this Court should consider the conflict between the Examiner and the Board as one of the elements that goes into our consideration "along with the record as a whole in determining whether there is substantial evidence to support the Labor Board's decision." We there quoted the Supreme Court decision in NLRB v. Walton Manufacturing Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829, where it was said, "The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case." We think it is equally true that the appearance of the witnesses may be of great significance in apprais-

ing the nature of a threat of personal violence admittedly made against an employer. Taking into consideration the evidence in the record as a whole, we find that there is not substantial evidence warranting the Board's finding that Scott's threat "to kick hell out of" Smith was not such "aggravated and gross misconduct" as to "render him unfit for further employment."

The Board's order will therefore be enforced in all respects except as relates to the offer of reemployment to Scott. As to such reemployment, enforcement is denied.