### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### SOFT WATER LAUNDRY, INC., Respondent.

No. 21303.

United States Court of Appeals
Fifth Circuit.

June 15, 1965.

---

Richard P. Lawlor, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, Warren M. Davison, Atty., N. L. R. B., Washington, D. C., for petitioner.

Jesse S. Hogg, Tampa, Fla., Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., of counsel, for respondent.

Before WISDOM and GEWIN, Circuit Judges, and BREWSTER, District Judge.

GEWIN, Circuit Judge.

The Board petitions for enforcement of an order issued against the respondent for violations of sections 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1), (3). The order is premised on the conclusion that respondent violated section 8(a) (1) of the Act by interrogating employees concerning their union activities and interests, engaging in surveillance of employee union activities threatening retaliatory measures against those so engaged, and promising benefits for those abandoning the union. The Board also found that respondent violated sections 8(a) (3) and (1) by discharging Magnolia Odom because of her union interest and activity. The order requires respondent to cease and desist from engaging in the above violations and to reinstate, with back pay and interest, the discharged employee.

There was substantial evidence to justify the findings of the Trial Examiner and the Board that there were section 8(a) (1) violations, and the order in this respect is not seriously contested. Respondent urges, however, that Magnolia Odom was lawfully discharged following an incident of flagrant insubordination and requests that enforcement of that part of the order directing her reinstatement be denied.

Respondent is engaged in the laundry and dry cleaning business. From about March to June, 1962, during the course of a union campaign to organize the laundry and dry cleaning workers, various management representatives threatened employees with reprisals if the union obtained a majority, tried to dissuade them from joining the union, promised benefits to those who declined, and, in general, engaged in surveillance and harassment of those who held union sentiments. On several occasions, Odom, a silk finisher who had worked for respondent for about seventeen years, was questioned concerning her union activities and warned as to the possible adverse consequences of unionization. Davis, her supervisor, knew that she had attended union meetings, signed a union authorization card, and obtained the signatures of about seven of her co-workers on similar cards. She was reminded of a union strike at Eastern Air Lines and asked how she would like to lose her home and car. Several employees had been warned by supervisors that the company was aware of the union activities among the production employees and told that if the union were successful the respondent might terminate its policy of lending money to employees. On July 23 Davis reminded Odom that she had borrowed $50 from the company in June and suggested that she find out what the union representative, Porter, would do if she needed $50.

About July 16, in protest of the possibility of the company's discontinuing its loan policy, the laundry employees began boycotting the company's soft drink machine, making their purchases from a nearby general store instead. On July 24 the boycott had spread to the dry cleaning employees. That morning Odom purchased a soft drink from the general store. After she had finished the drink, she placed her empty bottle outside the plant. During this period, Davis had instructed Warner, a handyman, to collect all the empty bottles littered throughout the plant because of the danger from broken glass and the possible hazard to persons walking in and around the plant. On July 25, during the morning break, Odom, finding her bottle missing, asked Warner what had happened to it. Warner told her that Davis had instructed

him to pick up the bottles. Odom immediately commenced a loud and profane vituperation, punctuated with extreme obscenity, in the hearing and presence of other employees. When Davis appeared and attempted to pacify her, she attacked his authority to have her bottle moved and continued her tirade. The Trial Examiner found that only Odom used profanity during this episode. Davis told her that if she carried out her threat to replace the bottle with one from respondent's machine, he would deduct its cost from her pay. As he turned to walk away, Odom used a vile and obscene epithet and allegedly threatened to stab Davis.

The next morning Odom was requested to report to Knightly, the plant superintendent, to whom she related the events of the previous day. Davis then related his version of the incident. Knightly told Davis to "straighten the matter out," and he did so by discharging Odom with the comment, "And now go see what Porter [the union organizer] can do about it." The Trial Examiner found that Odom did not threaten Davis and that profanity was the rule rather than the exception in the plant. From these and other facts in the record, he concluded that the incident over the soft drink bottle was a mere pretext and that the real reason for Odom's discharge was her union activities.[1]

Fully cognizant of the standard of review in cases of this nature, we grant the petition for enforcement of the Board's order as to the section 8(a) (1) violation and deny it as to the alleged

violation of section 8(a) (3). Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1961).

The respondent accepts all the resolutions of credibility by the Trial Examiner, but contends that, on the credited testimony of the Board's witnesses alone, there is not substantial evidence of a discriminatory discharge. As the company points out, there were a large number of other employees who also voted for the union, and there were a number of employees more active than Odom in behalf of the union, but none of these were discharged. In addition, respondent contends that Odom was not "singled out" for reprisal, since the record indicates that company representatives made similar comments to practically all of the laundry and dry cleaning employees. Respondent stresses the fact that there was no evidence of a plan or scheme of retaliation against union activity by discharging union proponents; Odom was the only employee discharged during the organizational drive. Instead, respondent asserts that, as its own witnesses testified, Odom was discharged because of her flagrant insubordination.

Respondent urges that both the Board and Examiner erroneously concluded that the discharge was based upon a threat, which the Examiner found was not made, when in fact the discharge was for insubordination. The record clearly reflects that respondent did, indeed, rely not only on the alleged threat, but also on the profanity and on insubordination.[2]

1. The Trial Examiner stated:
"These findings are based upon the total pattern as depicted above; the interference, restraint and coercion; Odom's length of service; Davis' singling her out, on four recent occasions, for conversations about the Union; and the fact (as I have found) that she did not make the threat to which her discharge is attributed."

2. During the cross-examination of Mrs. Odom:
"TRIAL EXAMINER:
What was the reason for her discharge?

"MR. GREEN:
The reason for her discharge, the primary reason was this insubordination and the threat with the knife, and the language that she used, that is the primary reason."
\* \* \* \* \*
After the direct examination of Davis, the following colloquy occurred:
"TRIAL EXAMINER:
Let me clarify one thing here, if I can. Mrs. Odom's work performance had nothing to do with the discharge?
"MR. GREEN:
No.

Apparently the Examiner did not consider that respondent's answer was based solely on the alleged threat by Odom. Instead, he characterized the company's justification of the discharge as predicated upon "a profane threat" or "profanity coupled with a threat." It is not entirely clear whether he found that Odom called Davis an obscene name, but Odom admitted in her own testimony that she used extreme profanity in her conversation with Davis.

 It is undisputed that the discharge of an employee for wrongful conduct is an inherent power of management and one that is protected by law. Shell Oil Co. v. NLRB, (5 Cir. 1952) 196 F.2d 637. The National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1) and (3), does not entitle an employee to engage in unauthorized conduct that is disruptive of harmonious labor relations between employer and employee, or among the employees. Caterpillar Tractor Co. v. NLRB, (7 Cir. 1956) 230 F.2d 357. An employer may, therefore, hire and discharge at will so long as the action is not based on opposition to union activities. NLRB v. McGahey, (5 Cir.) 1956) 233 F.2d 406; Farmers' Co-Operative Co. v. NLRB, (8 Cir. 1953) 208 F.2d 296. Paraphrasing our holding in NLRB v. Birmingham Publishing Co., (5 Cir. 1959) 262 F.2d 2, 9: "If a man has given his employer just cause for his discharge, the Board cannot save him from the consequences by showing that he was pro-union and his employer anti-union. * * * If an employee is both inefficient [insubordinate] and engaged in union activities, that is a coincidence that does not destroy the just cause for his discharge."

The question is whether, as a matter of law, the Examiner and the Board gave the language used its plain and ordinary meaning, and whether they ignored entirely or failed properly to assess Odom's conduct in light of the respondent's contention that such conduct constituted insubordination that would justify a discharge.[3] Actually neither the Examiner nor the Board passed on the contention made by the respondent that insubordination was one of the reasons for the discharge.[4]

 The Trial Examiner having found that no threat was made, we do not deal further with that aspect of the case, since we must accept the Examiner's credibility resolutions. He also concluded that profanity was not the real reason for the discharge, ignoring respondent's contention that Odom's demeanor and conduct as well as her profane language constituted insubordination. The position of the respondent on the insubordination issue . was clearly raised both at the hearing before the Trial Examiner and here on review. To our mind both the conduct and the language of Odom constituted insubordination in the presence of other employees, a direct defiance of superior authority, and a refusal to follow reasonable requests and instructions. Such conduct was a clear justification for her discharge. This conclusion is inescapable, not only from the testimony of Odom,[5] but also from an examination of the

---

"TRIAL EXAMINER:
 The alleged threat did?
"MR. GREEN:
 (Indicating affirmatively)
"TRIAL EXAMINER:
 Now, about the language?
"MR. GREEN:
 All of it together is our position."
 According to respondent, it reiterated this position in its brief to the Trial Examiner.

3. See footnote 2.

4. The following is from the Examiner's findings:

"The answer denies this; further explicating at the hearing, Respondent, admitting the fact of discharge, attributes it to Odom's use of a profane threat directed at a supervisor."
 * * * * *
 "Respondent contends that it was not the profanity alone which brought about the discharge; it was the profanity coupled with the threat."

5. Odom testified as follows:
 "I said, 'You won't throw the damn bottle away,' and then Harold Davis came

entire record. NLRB v. R. C. Can Company, (5 Cir. 1965) 340 F.2d 433; NLRB v. Wix Corporation, (4 Cir. 1962) 309 F.2d 826.

■ In view of our conclusion that Odom was guilty of insubordination, it is unnecessary to review the conclusion of the Examiner that the use of profanity by her was not a motivating influence for the discharge. However, background facts, the utterances of the parties involved, and the circumstances surrounding the conduct in question are important considerations in reviewing a determination of motive. Actions speak louder than words, but strong, indecent, vulgar, repulsive, opprobrious and obscene language should not be ignored in passing upon conduct and motivation.[6]

■ The timing of the discharge is also pertinent evidence of motivation.

NLRB v. Elias Brothers Big Boy, Inc., (6 Cir. 1963) 325 F.2d 360. The Examiner observed, "Why did he [Davis] not discharge Odom on the spot?", and General Counsel underscores the fact that Davis took no disciplinary action until the day after the altercation occurred. Of course, the Examiner's query was predicated on the fact that a threat was made. Also, there was evidence that Davis normally consulted with Knightly before hiring or discharging. He reflected upon the affair, reported it to the superintendent the next morning, and the discharge followed immediately. In the circumstances we see nothing particularly suggestive about this slight delay.

■ The chief affirmative evidence which linked Odom's discharge with union activities was the statement Davis made at the time he discharged her:

up and he told me that I would have to mind what he said, I had to watch my language because peoples around there had feelings. I told him I had just as much feeling as anybody else, and besides, I wasn't talking to him, and what I said didn't concern him, and he didn't have any business in getting into the conversation, and he said, 'Well, if you want the bottle, you better put it in your automobile.' I say, 'I'll not.' He said, 'Well, Sol have all authorities to throw bottles away.' I say, 'Well, then, if he throw another bottle away that I pay three cents for, I will have to get one out of the case,' and he said, 'If you get one out of the case, I will take it out of your salary.' I say, 'No, you won't do that. You have to take three cents out of my salary and Sol gets all his clothes cleaned and pressed free, so he start paying for something too.' So, at that time, that's all I could remember right then."

\* \* \* \* \*

"Q Now, you have admitted on direct testimony and, direct examination, that Harold Davis told you that he didn't want those bottles lying around there. A I did.

"Q And you told him that they were your bottles and he didn't have anything to do with them?"

\* \* \* \* \*

"Q (By Mr. Green) What did you say? A I said Harold told me—"

\* \* \* \* \*

"THE WITNESS:
—that I would have to keep them in my car if I wanted the bottle, and if I took one out of the case and took it to the store, that he would take three cents out of my pay.

"Q (By Mr. Green) And you talked back to him at that point? A I did.

"Q And didn't you also make a statement to him that if they took your bottle, that you would take one of the company bottles? A I did.

"Q Now, Mrs. Odom, Harold came back there and asked you to hush and to quiet down and quit using this profanity, didn't he? A He came there and told me that I would have to watch what I said because peoples there had feelings, and I told him I had as much feelings as anybody else."

6. The following cases involve the use of intemperate language: NLRB v. Blue Bell, Inc., (5 Cir. 1955) 219 F.2d 796 (calling company vice-president a "liar"); Gulf Coast Transit Co. v. NLRB, (5 Cir. 1964) 332 F.2d 28; Caterpillar Tractor Co. v. NLRB, (7 Cir. 1956) 230 F.2d 357 (use of the term "scab"); Farmers' Co-Operative Co. v. NLRB, (8 Cir. 1953) 208 F.2d 296 (cursing company manager); NLRB v. R. C. Can Co., (5 Cir. 1965), 340 F.2d 433 (threat to "kick hell out of" manager); NLRB v. Longview Furniture Co., (4 Cir. 1953), 206 F.2d 274 (use of profane and indecent language to humiliate and degrade); NLRB v. Polynesian Arts, (6 Cir. 1954) 209 F.2d 846 (insubordinate profanity).

"And now go see what Porter can do about it." This comment alone is not substantial evidence that the discharge was discriminatory in light of the entire record, although it may indicate anti-union animus generally. Certainly it cannot by itself establish the reason for Odom's discharge.

The burden is on the Board to prove and not on the employer to disprove the existence of unlawful motivation in discharging the employee. See, e. g., NLRB v. Birmingham Publishing Co., supra; NLRB v. Wellington Mill Div., West Point Mfg. Co., (4 Cir. 1964) 330 F.2d 579. Our review of the record convinces us that the Board has not successfully borne that burden and that its finding as to the motivation for the discharge is not supported by substantial evidence on the record considered as a whole. The Board's order will be enforced in all respects except that portion which requires the reinstatement of Odom.

Enforced in part and denied in part.