**CORRIVEAU & ROUTHIER CEMENT BLOCK, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 7194.**

United States Court of Appeals First Circuit.

May 5, 1969.

Alan Hall, Manchester, N. H., with whom Richard C. Kohls and Wadleigh, Langdell Starr, Peters & Dunn, Manchester, N. H., were on the brief, for petitionent.

Robert E. Williams, Washington, D. C., Atty., with whom Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William F. Wachter, Atty., were on the brief, for responder.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This case involves the question of whether Corriveau & Routhier Cement Block, Inc. (the Company), a distributor of masonry supplies with places of business in Manchester and Nashua, New Hampshire, violated §§ 8(a) (3) and 8 (a) (1) of the National Labor Relations Act by interrogating one of its employees in connection with union organizational activities and by firing two of its employees in connection with reported threats to other employees. The Board, unpersuaded by the findings and reasoning of the trial examiner, concluded that the Company had violated the Act.

██ On May 8, 1967,[1] three days before a representation election scheduled for the Company's truck drivers, Alphonse Corriveau, the Company president, accompanied employee Jean Helie on a delivery trip to Williamstown, Massachusetts. Corriveau testified that he went on the journey to find out why the trips were taking so long since there was a danger of violating ICC regulations restricting the number of hours an employee may drive. This was the first time, however, that a representative of management had accompanied Helie on a trip in his nine years with the Company and he was not given any explanation why an exception was being made on this occasion. During the journey Corriveau, after acknowledging that he had no business talking about union activities with his employees, said to Helie, "you must know who went union." Helie replied that he didn't want to talk about such things. Although this was not exactly a shocking episode the Board found that in context these remarks by the highest Company official under circumstances unique in the employee's experience and shortly before a representation election, constituted an implied interrogation concerning union organizational activities of a coercive nature in violation of § 8(a) (1). This is a very close question. But the decision is one which the Board in its expertise was entitled to make, and one which, for that reason, we decline to disturb. Compare analysis and criteria in Bourne v. N. L. R. B., 332 F.2d 47 (2d Cir. 1964.)[2]

On the other hand, the Board, disturbed by what Corriveau said to Helie, is much more tolerant of what Helie and his co-worker Richard Lavoie said to their fellow employees. Approximately two weeks before the election Helie, during an unloading operation at the Nashua yard, told one of the employees that if he didn't vote union, he, Helie, would "see him down the road." This was reported to Norman Juneau, the manager of the Nashua yard, who was Corriveau's trusted subordinate of many years standing. Juneau did nothing about this threat because it involved the word of only one man and was an isolated event at the time. Later, on the evening of May 9, as a union meeting was breaking up, Helie and Lavoie stated that they would find out who voted against the union and

1. There is some dispute whether May 8 is accurate. We think the record supports this determination of the Board and in any event nothing turns on whether it is precisely accurate.

2. Also, the trial examiner found that the Company had threatened the employees with economic reprisals should the union succeed in the election. The Company filed no exception to this finding and it is now out of the case as a separate issue. Still it is a factor in evaluating the climate in which the subsequent interrogation of Helie took place.

would see such malefactors "down the road." These threats were apparently addressed to the group in general but in the commotion of the situation some of the employees heard them and some did not. On the following day, which was the day before the election, one of the employees at Nashua informed Juneau of these threats. After obtaining corroboration from another employee, Juneau telephoned Corriveau to inform him. It is not clear whether Juneau told him merely of what had occurred the night before or whether he also mentioned the previous threat by Helie alone.[3] In any event, Corriveau, without further investigation, arranged to see Helie and Lavoie the same day and fired them. At the time of their discharge Corriveau told these two employees they were being discharged because they made threats of violence against fellow employees which neither denied.

The Board found that these dismissals were in violation of § 8(a) (3) and (1) of the Act although it found that the threats were in fact made and did not find that they were used merely as a pretext for the dismissals. The Board stressed that the threats had occurred at a union meeting during non-working hours that was not on Company property nor in the presence of Company supervisors and that the offense had not been of an egregious sort that was likely to impair the on-the-job efficiency of those threatened; that under these circumstances the interest of the employees in being able to organize without fear of being called to account by the employer for what they might say at organizational meetings outweighs the interest of the

employer in protecting his employees from threats by their fellow employees.

On the facts of this case we find such reasoning unpersuasive. An employee's § 7 rights are a shield against employer oppression, not a sword to intimidate fellow employees. Nor do we believe that the loss of the "right" to threaten another employee will dissuade an employee from saying anything he has any business saying in an organizational context. Moreover, the fact that these threats did not occur on the job, while relevant, is not controlling. Employers have no obligation to retain the type of man who threatens other employees.[4]

We are told that we ought not to disturb a determination of the Board in matters such as these. But really the shoe is on the other foot. Where retaliation for union support is not involved, "[t]he board cannot substitute its judgment for that of the employer as to what constitutes reasonable grounds for discharge. * * * The question of proper discipline of an employee is a matter left to the discretion of the employer." N. L. R. B. v. Ogle Protection Service, Inc., 375 F.2d 497, 505 (6th Cir.), cert. denied, 389 U.S. 843, 88 S.Ct. 84, 19 L.Ed.2d 108 (1967).

The Board cites numerous cases, some of which do not seem very pertinent. The others do not persuade us. In N .L. R. B. v. Roadway Express, Inc., 257 F.2d 948 (4th Cir. 1958), the court ruled that the testimony of the dismissed employee that he had merely engaged in conversation with a union official about union business was uncontradicted. N. L. R. B. v. Efco Manufacturing, Inc., 227 F.2d

3. Corriveau testified to a previous threat by Helie but apparently thought this involved a telephone conversation rather than an incident in the Nashua yard.

4. The Board makes the additional argument that the threats were of little importance because all concerned were aware that the election would be conducted by secret ballot. This would be persuasive in a different factual setting but here there were only nine men in-

volved, including Helie and Lavoie. There is little doubt that in such a small group where many people make their views commonly known, it can be inferred with a high degree of reliability who voted against the union. If the employer were the one guilty of threats we suspect the Board would give little weight to its assertion that since the election was secret it could not know whom to chastise.

675 (1st Cir. 1955), cert. denied, 350 U.S. 1007, 76 S.Ct. 651, 100 L.Ed. 869 (1956), merely involved conduct described by the trial examiner as "impolite" and this court accepted that characterization, id. 227 F.2d at 676. Therefore, the case differs sharply from the case *sub judice* where threats of violence are involved. In N. L. R. B. v. Thor Power Tool Co., 351 F.2d 584 (7th Cir. 1965) and N. L. R. B. v. Leece-Neville Co., 396 F.2d 773 (5th Cir. 1968), the employees were fired for union activity rather than for any misconduct. Additionally, in *Thor* the employee appears to have been more the victim than the aggressor but in any event, what employee misconduct there was, involved neither violence nor the threat of violence. In N. L. R. B. v. Illinois Tool Works, 153 F.2d 811 (7th Cir. 1946), violence was not involved as the court specifically noted at 816.

 The Board also argues that even assuming the absence of anti-union motives on the part of the Company, the discharged employees must be reinstated. This is so, according to the Board, because the scope of the Company's right to discipline employees for conduct which arguably is itself, or occurs in conjunction with, protected activity is more limited than it otherwise might be. In the Board's view, the Company may not, as a matter of law, discharge employees on the basis of the conduct involved in this case. We do not quarrel with the general rule, we simply disagree with the Board's application of the rule. Threats of violence are not only not protected activity, they are the very antithesis of protected activity. See N. L. R. B. v. Suniland Furniture Co., 387 F.2d 123 (5th Cir. 1967). The fact that the employee was engaged in protected activity does not mean that the employer loses all interest in what he is doing. Cf. Montgomery Ward & Co. v. N. L. R. B., 374 F.2d 606 (10th Cir. 1967).

A decree will be entered affirming and enforcing the Board's order in part and setting aside said order in part, consistent with this opinion.