**TRUSTEES OF BOSTON UNIVERSITY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 76–1331.

United States Court of Appeals,
First Circuit.

Jan. 28, 1977.

Harold Hestnes, Boston, Mass., with whom John G. Fabiano, Waban, Mass., James L. Quarles, III, Washington, D. C., and Hale & Dorr, Boston, Mass., were on brief, for petitioner.

John G. Elligers, Atty., Washington, D. C., with whom John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Aileen Armstrong, and Woody N. Peterson, Attys., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The Trustees of Boston University ("BU") have petitioned to set aside, and the National Labor Relations Board has cross-applied to enforce, a Board order finding that BU violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., when it discharged Patti Schiffer from clerical employment at BU's Student Health Center and ordering her reinstatement. 224 NLRB No. 179.

We have examined the record and, more particularly, the Administrative Law Judge's subsidiary findings in light of BU's contention that there are inadequate grounds to conclude that the principal reason for Ms. Schiffer's discharge was her participation in concerted activity.[1] BU stresses that the Administrative Law Judge explicitly found a bad personal relationship between Ms. Schiffer and her supervisor, Irro Stephanou, and that Ms. Schiffer had been offensive on a number of occasions in dealings with supervisors and fellow employees, including on August 20 when she brandished a pair of scissors.[2] We agree that these matters were not insignificant, and could even have been found to explain and justify Ms. Schiffer's dismissal. But the ALJ and the Board were instead persuaded that Ms. Schiffer's misconduct was stimulated by the employer's own wrongful

---

1. Section 7 of the National Labor Relations Act gives employees the right to "self-organization . . . and to engage in other concerted activities for the purpose of . . . mutual aid or protection", and section 8(a)(1) makes it illegal for an employer to interfere with, restrain or coerce employees in the exercise of such rights. The Student Health Center employees, though not unionized, were entitled to the Act's protection. NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1961). See, e. g., NLRB v. KDI Precision Prods., Inc., 436 F.2d 385 (6th Cir. 1971); Hugh H. Wilson Corp. v. NLRB, 414 F.2d 1345 (3d Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970).

2. The ALJ, in weighing the scissors episode, concluded that, while it occurred, it was not perceived by anyone present at the time as "a serious threat". We find this a supportable characterization.

conduct, and that her firing was motivated not by legitimate considerations but by the illegal considerations that had earlier prompted BU to fire other clinic employees.[3] As this interpretation is supportable on this record, we affirm.

■ A case of this nature requires balancing the employer's right to run its office as it pleases against the employees' right to act in concert without fear of retaliation. *Compare Hochstadt v. Worcester Foundation,* 545 F.2d 222 (1st Cir. 1976). On the one hand, section 7 rights are "not a sword with which one may threaten or curse supervisors", *Florida Steel Corp. v. NLRB,* 529 F.2d 1225, 1234 (5th Cir. 1976). *See Corriveau & Routhier Cement Block, Inc. v. NLRB,* 410 F.2d 347, 350 (1st Cir. 1969). On the other hand, if an employee's conduct is not egregious there is "some leeway for impulsive behavior", *NLRB v. Thor Power Tool Co.,* 351 F.2d 584, 586–87 (7th Cir. 1965). *Crown Cent. Petroleum Corp. v. NLRB,* 430 F.2d 724, 730 (5th Cir. 1970); *see Hugh H. Wilson Corp. v. NLRB,* 414 F.2d 1345, 1356 (3d Cir. 1969), *cert. denied,* 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970). And the leeway is greater when the employee's behavior takes place in response to the employer's wrongful provocation.

"An employer cannot provoke an employee to the point where she commits such an indiscretion as is shown here and then rely on this to terminate her employment. [Citation omitted.] The more extreme an employer's wrongful provocation the greater would be the employee's justified sense of indignation and the more likely its excessive expression."

*NLRB v. M & B Headwear Co.,* 349 F.2d 170, 174 (4th Cir. 1965). Further, at least so long as the employee's indiscretions are not major,[4] it is immaterial that the employee's misconduct would constitute a sufficient reason for discharge if the actual reason for discharge is the employee's participation in concerted activity. *Hugh H. Wilson Corp. v. NLRB, supra,* 414 F.2d at 1352.

■ The ALJ's decision, adopted by the Board, reflected an awareness of these controlling legal principles and the need to construe them harmoniously. A conscientious effort was made to determine on which side of the line Ms. Schiffer's conduct fell. Especially in a situation as close and complex as this was, we are not easily tempted to second-guess the ALJ even though the record might equally be capable of supporting a different interpretation. The drawing of inferences as to motivation is best left to the Board, and especially to the ALJ who heard and observed the witnesses. *See Editorial "El Imparcial", Inc. v. NLRB,* 278 F.2d 184, 187 (1st Cir. 1960). We affirm the finding that Ms. Schiffer's discharge violated section 8(a)(1).

BU also contests the Board's modification of the ALJ's order with respect to Ms. Schiffer. After finding that the poor relationship between Ms. Schiffer and Stephanou was due in part to "immutable personality traits, rather than the labor dispute", he ordered her reinstated to "some position, substantially equivalent to her former one, in another department". The Board, however, ordered Ms. Schiffer reinstated to her former job.

■ The Board recognized the personality clash between Ms. Schiffer and Stephanou but felt that the conflicts between the two were fueled significantly by Ms. Schiffer's participation in protected activities. In the circumstances, its conclusion that denying Ms. Schiffer reinstatement to her former job would not serve the policies of the Act cannot be called unreasonable. The Board may have believed that a less com-

---

**3.** BU has not objected to the Board's findings that BU's acceleration of Smith's maternity leave, refusal to review Walshe's contract, discharge of Boudreau and Hirsh, promulgation of a "no-discussion rule", and issuance of warning letters to Cook and Dershin, were all unfair labor practices.

**4.** Courts have been unwilling to overlook blatant misconduct such as physical intimidation. *Cf. Florida Steel Corp. v. NLRB,* 529 F.2d 1225, 1234–35 (5th Cir. 1976).

**394**

plete remedy would leave doubt as to whether the Act fully protected the rights of employees to engage in concerted activity, since the employer would have succeeded in forcing Ms. Schiffer's removal from the Center. We do not necessarily have to share this point of view. It is enough that the Board's remedy was based on a rational judgment as to how effectively to promote the goals of the Act. "In fashioning its remedies under the broad provisions of § 10(c) of the Act (29 U.S.C. § 160(c)), the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1937, 23 L.Ed.2d 547 (1969). The Board's remedy cannot be characterized as "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act". *Virginia Elec. & Power Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943). We will therefore not disturb it, although it of course remains open for Ms. Schiffer voluntarily to accept employment in another department at BU should such a position be offered her. Our affirmance of the Board's order is not to be taken as an indication of approval of Ms. Schiffer's conduct, which left much to be desired, and might afford a basis for subsequent discharge if her employer's conduct improves, and hers does not.

*The petition for review is denied, and the cross-application for enforcement is granted.*