**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Arthur COLLIER, d/b/a Arthur Collier Electric Company, Respondent.**

No. 76–3104.

United States Court of Appeals, Fifth Circuit.

June 2, 1977.

Elliott Moore, Deputy Assoc. Gen. Counsel, Michael S. Winer, Supervisor, Marjorie Gofreed, Atty., John S. Irving, Jr., Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Lawrence H. Clore, Philip J. Pfeiffer, Houston, Tex., for respondent.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

The National Labor Relations Board ("the Board") seeks enforcement of its order that Arthur Collier Electric Company ("Collier Electric") recall Odis Brinkley and Vester Havard to the first journeyman electricians' jobs for which they are qualified, make Brinkley and Havard whole for loss of earnings, cease and desist from interfering with, restraining, or coercing employees in the exercise of their section 7 rights, and post appropriate notices. The order results from charges by the International Brotherhood of Electrical Workers, Local 716, that Collier Electric violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("NLRA")[1] by threatening discharge, by actually discharging, and by refusing to recall the two employees, all on account of their union activities. The Administrative Law Judge ("the Judge") found only that Collier Electric violated section 8(a)(3) by "refusing to consider Havard or Brinkley for recall." The Board adopted his findings and proposed remedy. 223 N.L.R.B. No. 145 (1976). We deny enforcement.

Collier Electric, with its home office in Temple, Texas, does electrical work on construction projects. The company employed Brinkley on February 13, 1975 and Havard on March 6, 1975 as journeyman electricians. Shortly thereafter each became a union member and agreed to help organize the employees of Collier Electric. In late April, after working on several other jobs, Brinkley and Havard were transferred to the company's Ralston-Purina job at Madisonville, Texas. In late April and early May the company had its Madisonville crews work periodically at a job in Jewett, Texas. Apparently these temporary assignments to Jewett were inconvenient for Brinkley and Havard, and foreman Arnold Pechal had trouble with their substantial absenteeism.

Although Collier Electric began some new jobs in 1975, it experienced a steady diminution in overall work load. Consequently, the company's workforce was reduced by about 50 employees from January, 1975 to the hearing date in November, with some 20 journeymen laid off between January and June, 1975. Because of this shrinkage the company's president, Arthur Collier, needed to find jobs for his long-time employees. On Saturday, May 17, 1975 Pechal discussed the Madisonville job with Mr. Collier and mentioned his problem with Havard's and Brinkley's absenteeism. Collier referred to his need to find jobs for his long-time employees and told Pechal he would visit the jobsite the next week. He came to the Madisonville jobsite on Wednesday, May 21, and told Brinkley and Havard that in order to make room for his long-time employees Friday, May 23, would be their last day on the job. Finding that other Collier Electric employees, much less

the supervisory personnel, did not know about Brinkley's and Havard's interest in the union before the layoffs, the Judge concluded that there was no showing of antiunion animus upon which to base a section 8(a)(3) layoff charge.[2] That finding is not now in dispute.

Just as it is clear that neither Mr. Collier nor other supervisory personnel were aware of the union activities of Brinkley and Havard before the layoffs, it is clear that Collier, Pechal, and other supervisors *were aware* of such activities soon thereafter. On the Wednesday Mr. Collier informed them of their layoffs, Brinkley and Havard informed Pechal of their union membership and solicited his membership. That day they solicited at least two other Collier Electric workers for union membership. Mr. Collier soon learned of Brinkley's and Havard's union activities from Pechal and on Thursday, May 22, from Brinkley himself in a telephone conversation.

On Friday, May 23, Brinkley and Havard showed up at the Madisonville site and were told by Pechal that they would have to go to the Collier Electric office in Bryan to pick up their paychecks and dismissal slips. Havard then told Pechal that if they had any trouble getting their checks in Bryan "they were instructed to clean up shop," that "they had ten guys around the corner waiting to help them" if necessary, and that if an incident occurred at the Bryan office "none of the Collier guys would be safe in Bryan" any longer. Pechal assured Brinkley and Havard that the Collier employees wanted no trouble with them. Pechal asked them if they held a grudge against him, they said no, and he shook hands with them and accompanied them to their truck. Brinkley got into the truck, reached under the seat, pulled out his .357 magnum pistol, and told Pechal, "If you cause me any kind of trouble or problems, I'll use this on you." Pechal assured Brinkley that he would cause him no trouble. Pechal kept his word and did not immediately inform either Mr. Collier or the police about the incident.[3]

Although Pechal, who has no role with respect to hiring, testified that a "couple" of new journeymen were hired after May 23, he could name only one—W. Springer. Mr. Collier testified that Springer was the only journeyman hired between May 23 and the hearing in November, and Springer was an exceptional case, as he was highly recommended by some of Mr. Collier's close acquaintances in Temple. The only testimony concerning the date Springer was hired was Pechal's statement that Springer began work on his job "roughly in July." There is no evidence that any of the laid off electrical journeymen were recalled during 1975.

The instant unfair labor practice charges were filed on June 25, 1975. When Collier Electric received notice of the charges,[4] Mr.

2. The section 8(a)(1) charge was based on allegations that another Collier Electric supervisor, Marvin Fox, on May 2, 1975 threatened Havard with discharge because of his union membership or activities. The Judge found that Fox did not make the alleged threat and recommended dismissal of that part of the complaint. As noted above, the Board adopted the Judge's decision *in toto*. Like the findings as to the layoffs, the findings as to the section 8(a)(1) charge are not now disputed.

3. Only Pechal gave an account at the hearing of the gun incident. Brinkley and Havard were called as witnesses in the General Counsel's case-in-chief. Pechal was subsequently called by the company, and neither Brinkley nor Havard were recalled to rebut Pechal's testimony.

4. There is no evidence of exactly when the investigation was conducted or the decision never to recall Brinkley and Havard was reached, as there is no evidence of exactly when the company received notice of the charges. The NLRA only requires that a charge be filed and notice thereof served on the charged party within six months of the event alleged to be an unfair labor practice. 29 U.S.C. § 160(b). The regulations only state that "[t]he regional director may cause a copy of the charge to be served upon" the charged party, but that such notice is not a substitute for the six-month requirement of the statute. 29 C.F.R. § 101.4. At oral argument the Board's counsel stated that the charges were filed "about a month after the layoffs" and that the employer's investigation occurred "at that time." We will therefore consider the investigation and decision not to recall to have occurred in very early July, 1975.

Collier conducted an "in-depth investigation" of the facts surrounding the employment and layoffs of Brinkley and Havard. From that investigation Mr. Collier learned for the first time, *inter alia*, of the gun incident. On the basis of the investigation Mr. Collier determined that the two never would be eligible for recall. The Judge concluded that Mr. Collier was motivated by antiunion animus and consequently that his determination never to recall Brinkley and Havard was based on their union membership and activities. The Judge further concluded that Mr. Collier's asserted reasons for his decision do not stand "the test of even superficial scrutiny." Although Pechal's testimony about the gun incident was uncontradicted, the Judge discounted it, saying that the incident "was one [of] mere bravado on the part of Brinkley." Thus, the Judge concluded that Collier Electric's "refusal to consider" Brinkley and Havard for reemployment constituted a violation of section 8(a)(3).

█ █ We must enforce the Board's order if it rests upon substantial evidence considering the record as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–91, 71 S.Ct. 456, 463–66, 95 L.Ed. 456, 467–69 (1951); *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 808, 82 S.Ct. 853, 855, 7 L.Ed.2d 829, 832 (1962); *NLRB v. Brennan's, Inc.,* 5 Cir., 366 F.2d 560, 562, 565, *modified,* 368 F.2d 1004, 1005 (5th Cir. 1966). Our difficulty here, however, is that having antiunion animus by itself does not violate section 8(a)(3). There must also be proof that the employer had an opportunity to and did in fact discriminate. *E. g., NLRB v. Brown,* 380 U.S. 278, 286, 85 S.Ct. 980, 985, 13 L.Ed.2d 839, 846 (1965); *Mueller Brass Company v. NLRB,* 544 F.2d 815, 819 (5th Cir. 1977); *Florida Steel Corporation v. NLRB,* 529 F.2d 1225, 1234 (5th Cir. 1976); *Firestone Tire & Rubber Co. v. NLRB,* 449 F.2d 511, 513 (5th Cir. 1971). Discrimination consists of treating like cases differently. *Mueller Brass, supra; Frosty Morn Meats, Inc. v. NLRB,* 296 F.2d 617, 621 (5th Cir. 1961).

█ Hence, the General Counsel had the burden of proving that Collier Electric had an opportunity and did in fact fail to recall or to consider Brinkley and Havard for reemployment while considering others for recall. *NLRB v. U.S. Gypsum Co.,* 206 F.2d 410, 413–14 (5th Cir. 1953); *Indian Head Hosiery Co., Inc.,* 199 N.L.R.B. No. 75 (1972). The General Counsel did not satisfy that burden here, at least for the period from the time of the layoffs to the time Mr. Collier decided never to consider Brinkley and Havard for recall or rehire. There is simply *no evidence* in this record that Collier Electric recalled or even considered for recall journeymen electricians who were laid off in 1975 for economic reasons. Thus the record does not show who, if anyone, was recalled and whether Collier Electric was aware of the pro or antiunion attitudes of anyone recalled. Therefore the Board could not find that like cases were treated differently.

The hiring of Springer does not provide the needed proof. Springer was a new hire, not a recalled employee. Moreover, Springer was an exceptional case; Mr. Collier hired him on the strong recommendation of personal acquaintances. Perhaps even Springer was preferred over laid-off journeymen with neutral or antiunion attitudes. Finally, there is no proof that Springer was hired before Mr. Collier's determination that Brinkley and Havard were ineligible for recall.

█ The Board contends, however, that such proof was unnecessary because Mr. Collier determined *never* to consider the two men, even if he eventually needed to recall journeymen or hire new ones. But as Judge Wisdom has written, "If, however, the misdeeds of the employee are so flagrant that he would almost certainly be fired anyway, there is no room for discrimination to play a part." *Frosty Morn Meats, supra,* at 621. That principle applies as well to cases involving failure to recall. *See, e. g., Sports Coach Corporation,* 218 N.L.R.B. No. 158 (1975) (poor attitude); *Morrison-Knudsen Company, Inc.,* 204 N.L.R.B. 48

(1973) (instigating work stoppages in violation of a no-strike clause).

■ The Judge thought Pechal exaggerated Brinkley's and Havard's threats of bodily harm. Yet the occurrence of the gun incident and the dialogue preceding it are not in dispute. This is not a case of "mere animal exuberance." *Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc.,* 312 U.S. 287, 293, 61 S.Ct. 552, 555, 85 L.Ed. 836, 841 (1941); *Overhead Door Corporation v. NLRB,* 540 F.2d 878, 882 (7th Cir. 1976). On these facts alone we have no doubt that Mr. Collier was justified in refusing ever to consider Brinkley and Havard for recall or reemployment. *Compare Mueller Brass Co., supra,* at 819–20 (employee's "conduct and statements were vulgar and offensive by any standard of decency"); *Overhead Door Corporation, supra* (enforcement of Board's reinstatement order denied as to employee who carried a concealed gun to the picket line and pointed it at company property.) [5]

ENFORCEMENT DENIED.

---

5. *See also Florida Steel Corp., supra,* at 1233–34 (discharge justified where the employee raised his fist and cursed a supervisor); *Trailmobile Division, Pullman Incorporated v. NLRB,* 407 F.2d 1006, 1018 (5th Cir. 1969) (reinstatement denied to striking employees who intimidated and assaulted nonstriking employee); *NLRB v. Big Three Welding Equipment Co.,* 359 F.2d 77, 83 (5th Cir. 1966) (reinstatement denied to employees who pilfered company property); *NLRB v. Bin-Dicator Company,* 356 F.2d 210, 215–16 (6th Cir. 1966) (reinstatement denied to employee who made "fearsome threats and gestures" to supervisors); *NLRB v. R.C. Can Company,* 340 F.2d

433, 435–36 (5th Cir. 1965) (reinstatement denied to employee who threatened to harm the plant manager); *NLRB v. Coca-Cola Bottling Co.,* 333 F.2d 181, 185 (7th Cir. 1964) (employee disqualified from reemployment by "his pattern of falsification and deceit during his employment"); *NLRB v. National Furniture Mfg. Co.,* 315 F.2d 280, 286 (7th Cir. 1963) (reinstatement denied because of "basic antagonism" between employee and employer).