**PRECISION WINDOW MANUFACTURING, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**PRECISION WINDOW MANUFACTURING, INC., Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Petitioner.**

Nos. 91–3186, 91–3548.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1992.

Decided May 8, 1992.

Craig A. Sullivan, St. Louis, Mo., argued, for petitioner Precision Window Mfg., Inc.

Robert Herman, Washington, D.C., argued, for respondent N.L.R.B.

Before WOLLMAN and MAGILL, Circuit Judges, and WOODS,* District Judge.

MAGILL, Circuit Judge.

Precision Window appeals an order of the National Labor Relations Board requiring the company to reinstate an employee fired for engaging in protected union activity.[1] This appeal addresses only whether the fired employee forfeited his right to reinstatement by threatening to kill his supervisor and by making false statements under oath about his union activity.[2] A divided panel of the Board upheld the findings of the administrative law judge and concluded that the terminated employee had not forfeited his right to reinstatement. We reverse.

## I.

The pertinent facts are rather straightforward and uncontested. In November of 1989, several employees at the Precision Window plant began organizing a union on behalf of the Aluminum, Brick & Glass Workers International Union, AFL–CIO. Employee Steve Sitzes participated in the organizing by setting out a notebook in which employees interested in the union could sign their names. Sitzes signed the notebook and turned it into the union on January 8, 1990. Sitzes also testified in the administrative hearing that he had passed out union cards prior to his termination. On cross-examination, however, Sitzes admitted that he had not passed out union cards prior to his termination.

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Board filed a cross-application for enforcement of its order.

2. After holding a hearing, the administrative law judge found that Precision Window committed several unfair labor practices. The company filed exceptions with the Board pertaining only to the employee's reinstatement. The Board affirmed the ALJ. Those portions of the Board order that have not been appealed will be enforced summarily. *See* 29 U.S.C. § 160(e) (1988); *Woelke & Romero Framing, Inc. v.*

Brian Brannick, the company's vice president and head of manufacturing at the plant, fired Sitzes on January 9. The company asserts that it fired Sitzes for lying to supervisor Rick Hixon about his reasons for not being able to volunteer for work on a Saturday.[3] The ALJ concluded that Sitzes was fired for union activity and the lying rationale was employed "for something to pin on Sitzes." *Precision Window Mfg., Inc.,* 303 N.L.R.B. No. 141 (1991). The Board, thereafter, affirmed the ALJ's decision that Sitzes' firing violated § 8(a)(3) of the National Labor Relations Act.[4] The company does not contest this finding on appeal, but argues that Sitzes forfeited his right to reinstatement by his actions following the termination.

## II.

The Board has authority to order reinstatement of wrongfully discharged employees when it finds that reinstatement will effectuate policies of the Act. 29 U.S.C. § 160(c) (1988). While courts generally defer to the Board's discretion in ordering reinstatement, situations exist which justify rejection of the reinstatement remedy. *Alumbaugh Coal Corp. v. NLRB,* 635 F.2d 1380, 1385–86 (8th Cir. 1980). Even in cases where an employer wrongfully terminates an employee, the employee's post-discharge conduct may be so indefensible as to forfeit the Act's protections. *NLRB v. Vought Corp.,* 788 F.2d 1378, 1384 (8th Cir.1986); *Golden Day Sch., Inc. v. NLRB,* 644 F.2d 834, 839 n. 16 (9th Cir.1981).

*NLRB,* 456 U.S. 645, 665, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982); *Hall v. NLRB,* 941 F.2d 684, 687 (8th Cir.1991).

3. Because of an equipment failure, the plant was shut down for half a day during the week. Hixon sought volunteers from among the plant's approximately 40 employees to work on Saturday. Sitzes told Hixon he could not work Saturday because his wife was having a birthday party for him.

4. Section 8(a)(3), 29 U.S.C. § 158(a)(3) (1988), forbids discrimination in employment in order to encourage or discourage membership in a labor organization.

**1108**

## A. The Threat to Kill

■ As Sitzes was leaving the plant after his firing, he cursed Hixon, called him obscene names, challenged him to a fight, and threatened to kill him.[5] The threat to kill evidently was supposed to be consummated at 4:30 p.m., when the plant shut down. True to his word, Sitzes returned to the plant shortly before closing. A company official phoned police, who arrived in short order. Sitzes left the plant under orders of the police.

The ALJ determined that Sitzes' threat to kill his supervisor did not deprive him of his reinstatement rights.

The fact, however, that Sitzes *did* return to the plant at quitting time can be argued to make the earlier threat more real and intimidating. Sitzes testified that he "had to pick up [his] riders." There is no evidence in the record to contradict the claim that Sitzes had a car pool to which he owed an obligation, and the assertion is certainly not inherently unbelievable. But, whether or not his return to the plant evinced an intention to carry out his threat against Hixon, the fact is that he left without taking revenge (albeit under the watchful eye of the police) and has not since been shown to have made any attempt to harm Hixon.

*Precision Window Mfg., Inc.,* 303 N.L.R.B. No. 141 (emphasis and parentheticals in original). A divided three-member panel of the Board concluded that Sitzes' "rambling, semicoherent mix of insult and threat" did not rise to the level of conduct so flagrant that it required the forfeiture of reinstatement and backpay. Member Raudabaugh dissented. While agreeing with the majority that an employer may not provoke a fired employee into conduct that would forfeit his remedies under the Act, Raudabaugh asserted that a fired employee "does not have an unlimited right to engage in misconduct without losing his remedial rights." *Precision Window Mfg., Inc.,* 303 N.L.R.B. No. 141.

■ An employer may not provoke an employee and then rely on the employee's intemperate response as a ground for not reinstating him. *Vought Corp.,* 788 F.2d at 1384. Moreover, when a company wrongfully fires an employee, prior cases make clear that there is "some leeway for impulsive behavior." *Trustees of Boston Univ. v. NLRB,* 548 F.2d 391, 393 (1st Cir.1977) (quoting *NLRB v. Thor Power Tool Co.,* 351 F.2d 584, 586–87 (7th Cir. 1965)). Yet, an employee is not free to engage in wanton conduct following an unlawful discharge and then hide behind the Act's protections. The Act's remedies are "not a sword with which one may threaten or curse supervisors." *Trustees,* 548 F.2d at 393 (quoting *Florida Steel Corp. v. NLRB,* 529 F.2d 1225, 1234 (5th Cir.1976)).

■ As always in cases such as this, the question is where to draw the line as to the type of conduct that forfeits an employee's right to reinstatement. We have no trouble concluding the line was crossed here. When an employee threatens to kill his supervisor and follows it up with action conforming to that threat, he has forfeited any rights he may have had under the Act. Courts may allow certain indiscretions by employees who are wrongfully terminated, but they cannot overlook blatant misconduct such as threats of violence and physical intimidation. *Trustees,* 548 F.2d at 393 n. 4.

Courts universally reject reinstatement when employees threaten to kill or harm supervisors after a firing, no matter how wrongful the discharge may have been and no matter how understandable the "animal exuberance" displayed. *NLRB v. Collier,* 553 F.2d 425, 429 (5th Cir.1977) (laid-off employee brandished gun in front of supervisor); *NLRB v. Bin–Dicator Co.,* 356 F.2d 210, 212–14 (6th Cir.1966) (wrongfully fired employee cursed manager, threatened him with a metal casting, and promised to "get" him); *NLRB v. R.C. Can Co.,* 340 F.2d 433, 434 (5th Cir.1965) (wrongfully fired employee told supervisor he "would

---

**5.** Sitzes denied threatening to kill Hixon, but admitted that he threatened to "kick [his] butt and beat [his] Mexican face in." The ALJ cred-

ited the testimony of Hixon and two other witnesses that, in addition to the language above, Sitzes explicitly threatened to kill Hixon.

kick hell out of him the first chance I got"); *Family Nursing Home & Rehabilitation Ctr., Inc.,* 295 N.L.R.B. No. 95 (1989) (wrongfully fired employee threatened supervisor with bowling trophy). As member Raudabaugh noted in dissent, "By its very nature, a threat to kill is a threat that is more serious than any other." *Precision Window Mfg., Inc.,* 303 N.L.R.B. No. 141 (Raudabaugh dissenting).

To be sure, each incident must be judged in the context of its own facts. We have no quarrel with the cases that on less extreme facts have awarded reinstatement when the fired employee challenged his supervisor to a fight, *NLRB v. Morrison Cafeteria Co. of Little Rock, Inc.,* 311 F.2d 534, 538 (8th Cir.1962); *NLRB v. Steinerfilm, Inc.,* 669 F.2d 845, 851 (1st Cir.1982); *NLRB v. Yazoo Valley Elec. Power Ass'n,* 405 F.2d 479, 480 (5th Cir.1968), or used intemperate language. *Santa Fe Drilling Co. v. NLRB,* 416 F.2d 725, 733 (9th Cir. 1969); *299 Lincoln St., Inc.,* 292 N.L.R.B. 172 (1988). But even when employees' outbursts were more extreme, the Board awarded reinstatement only after finding that there was no actual threat to kill or to commit a violent act. *See, e.g., Anaconda Insulation Co.,* 298 N.L.R.B. No. 168 (1990); *Trustees of Boston Univ.,* 224 N.L.R.B. 1385 (1976), *enforced,* 548 F.2d 391 (1st Cir.1977).

We have difficulty understanding the Board's holding in this case because it so clearly contravenes its own standard. The Board normally denies reinstatement in those flagrant cases "in which the misconduct is violent or of such character as to render the employees unfit for further service." *C–Town,* 281 N.L.R.B. 458 (1986) (quoting *J.W. Microelectronics Corp.,* 259 N.L.R.B. 327 (1981), *enforced without opinion,* 688 F.2d 823 (3d Cir.1982)). The Board also has stated that when an employer refuses to rehire a striking worker that engaged in misconduct, the proper standard is "whether the misconduct is such

that, under the circumstances existing, it may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act." *Clear Pine Mouldings, Inc.,* 268 N.L.R.B. 1044 (1984), *enforced without opinion,* 765 F.2d 148 (9th Cir.1985) (quoting *NLRB v. W.C. McQuaide, Inc.,* 552 F.2d 519, 528 (3d Cir. 1977)).

■ Absent actual physical assault, there is no conduct more serious than a threat of physical violence. *R.C. Can Co.,* 340 F.2d at 435. Threats of physical violence lie outside the scope of the Act's protections, even if they are provoked by an unfair labor practice. *NLRB v. Red Top, Inc.,* 455 F.2d 721, 727 (8th Cir.1972); *Courriveau & Routhier Cement Block, Inc. v. NLRB,* 410 F.2d 347, 351 (1st Cir. 1969) ("Threats of violence are not only not protected activity, they are the very antithesis of protected activity.").

It is undisputed that Hixon considered the threat on his life as real. In fact, the Board majority concluded that Hixon felt threatened and that calling the police was a reasonable response under the circumstances. When an employee threatens to kill his supervisor and then shows up at the appointed hour, the wait for a more explicit act of intent could be a wait too long. While this court cannot deny that emotional outbursts following a tinder-box event like a job firing are inevitable, the extreme behavior of Sitzes cannot be tolerated under any circumstances.

### B. False Statements

■ The company also asserts that Sitzes forfeited his right to reinstatement by lying under oath during the administrative hearing. Sitzes testified that he had passed out union cards prior to his dismissal. He later admitted on cross-examination that he had not passed out any union cards prior to his dismissal.[6] The ALJ

---

**6.** Sitzes' testimony proceeded as follows. He testified he passed out union cards on January 5. After being shown a calendar, he corrected the date to January 8. He stated he got the cards at a union meeting and passed out about six cards before work and at lunch time on January 8. Tr. at 33–34. Reminded that the union meeting was at night after work on January 8, he stated he passed out the cards on January 4. Tr. at 35. After being refreshed

concluded that Sitzes was "initially dishonest about his predischarge activity in handing out authorization cards, although in the end, he was hammered into telling the truth." *Precision Window Mfg., Inc.,* 303 N.L.R.B. No. 141. Nevertheless, the ALJ found that "Sitzes' falsification of one aspect of his union activity was eventually recanted, and did not amount to a 'malicious abuse of the Board's processes.'" *Id.*

This court refuses to take the Board's processes as lightly as the Board apparently does. An employee may sacrifice his right to reinstatement by engaging in dishonest or fraudulent activity following his termination. *Alumbaugh Coal Corp. v. NLRB,* 635 F.2d at 1386. "[T]he purposes and policies of the Act do not justify full reinstatement of an employee whose dishonesty has been established and whose untruthful testimony abused the process he now claims should grant him full relief." *Id.* Specifically, an employee forfeits his reinstatement remedy when he purposefully testifies falsely during an administrative hearing. *Iowa Beef Packers, Inc. v. NLRB,* 331 F.2d 176, 185 (8th Cir. 1964); *NLRB v. Magnusen,* 523 F.2d 643, 645–46 (9th Cir.1975); *NLRB v. Coca–Cola Bottling Co.,* 333 F.2d 181, 185 (7th Cir. 1964).

The Board argues that Sitzes should retain his reinstatement remedy because he was generally truthful and recanted his false testimony. The fact that Sitzes recanted—or more appropriately "was hammered into telling the truth"—is unavailing. The law has little tolerance for half-baked explanations of phony testimony. The general perjury statute does not contemplate recantation as a defense. 18 U.S.C. § 1621 (1988); *United States v. Norris,* 300 U.S. 564, 573–74, 57 S.Ct. 535,

538–39, 81 L.Ed. 808 (1937); *United States v. DeVaughn,* 414 F.Supp. 774, 780 (D.Md. 1976), *aff'd without opinion,* 556 F.2d 575 (4th Cir.1977). Moreover, even if Sitzes could analogize his retraction to the recantation defense under 18 U.S.C. § 1623 (1988),[7] his correction was inadequate and late. Sitzes' testimony presents a classic example of what § 1623(d) seeks to prevent. This section requires an explicit admission that the prior testimony was false. *United States v. Goguen,* 723 F.2d 1012, 1018 (1st Cir.1983). It does not require that the factfinder be dragged through the lowly process of bargaining with the witness for the truth. Sitzes set out to mislead the ALJ as to the extent of his union activities. Through effective cross-examination, the company exposed the lie. Nevertheless, Sitzes did not admit the untruthful testimony. He attempted to parcel out new and equally false explanations each time a prior falsehood was exposed. This court cannot condone such a cynical usurpation of the factfinding process. No tribunal should be required to plumb the depths of deceit and skulduggery to discover the truth. Moreover, § 1623(d) requires the recantation to come before "it has become manifest that such falsity has been or will be exposed." Having had the truth "hammered out" of him, Sitzes' truthful testimony came too late.

### III.

Sitzes forfeited his right to reinstatement by threatening to kill his supervisor and by lying under oath at the administrative proceeding. The decision of the National Labor Relations Board is reversed.

---

again about the date of the union meeting, he testified that he passed out the cards on January 9. Tr. at 36. Sitzes was fired on January 9.

On cross-examination, Sitzes admitted giving an affidavit to the Board claiming he did not pass out any cards prior to his discharge. Tr. at 56–58. He then stated he took one card home to a fellow employee. Tr. at 58. Asked on redirect if he had or had not passed out any cards prior to his discharge, he testified, "I

might have passed out a couple." He then stated: "I did not pass out no union cards because I—we didn't get them. All I passed out was one." He then stated he passed out only one card and that was after he was terminated. Tr. at 94.

7. Section 1623 covers false declarations before a grand jury or court.