**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-10339
(Summary Calendar)
_____


SHARON A. FIELDS,

Plaintiff-Appellant,

versus


JANE KEITH;
DARYL M. BRYANT;
DELTA AIRLINES INC.

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas
(3:99-CV-2682-L)
_____
August 20, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Plaintiff-Appellant Sharon A. Fields ("Fields") appeals the

district court's grant of summary judgment to Defendants-Appellees

Jane Keith, Daryl M. Bryant, and Delta Airlines Inc. (collectively

"Delta") on her claims of defamation, theft, conversion, invasion

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

of privacy, and retaliation.  Finding no error, we affirm.

I.

FACTS AND PROCEEDINGS

Fields worked for Delta as a flight attendant for nearly 30 years.  One of her duties was to sell headsets and alcoholic beverages to Delta passengers.  Delta does not closely monitor such sales, but instead relies on its flight attendants to report their sales accurately and to turn in all funds received from such sales.

In early 1999, Delta began receiving reports from several flight attendants that they suspected Fields of mishandling funds from the sale of alcoholic beverages and headsets.  The frequency and similarity of the complaints prompted Fields's supervisor, Betsy Hanry, to bring the matter to the attention of her own supervisor, Jane Keith, who in turn advised Hanry to contact corporate security.  Pat Dillard, a corporate security representative, then began an investigation into the complaints against Fields.

As part of Delta's investigation, Dillard and Daryl M. Bryant (also a corporate security representative) traveled incognito on two flights serviced by Fields and used marked money to purchase headsets and alcoholic beverages from her on each flight.  On the return flight, Fields was required to make change for numerous passengers who purchased beverages for cash. As Delta does not provide its flight attendants with funds to make change, Fields used excess cash of her own that she carried with her for that

2

purpose.

As was customary, Fields kept the cash from the sale of headsets and alcoholic beverages in her beverage caddy. At the end of the flight, however, cash and alcoholic beverages were missing from Fields's caddy. Fields would not sign the certification card in her "liquor kit" because of these discrepancies. Another flight attendant, who was responsible for completing the liquor form for the entire flight, wrote on the form that Fields was responsible for eight bottles of liquor, and the flight attendant in charge then completed the form.

After the flight, Fields went to the Delta Employees Credit Union ("DECU"), where she deposited $300 in cash (the same as the amount of her own funds that she had brought with her aboard the flight). After the cashier handed Fields her receipt, Dillard and Bryant appeared and accused Fields of having stolen funds from the sale of liquor and headset money during the flight. Bryant then removed bills totaling $80 from the cash Fields had just deposited, and stated that these bills had been marked by him before the flight. In the presence of Fields, Dillard, and Keith, Bryant stated that Fields had stolen funds, including the $80 in marked bills.[2] Bryant also stated that "entrapping" Fields was the "easiest case [he] had ever had" because Fields was so "stupid."

_____

[2]Of course, given the facts that Fields provided change to passengers out her own funds and deposited the same total — $300 — as she started with, her inclusion of the marked bills in her deposit proves nothing with respect to the allegations of theft.

3

Keith suspended Fields, pending the investigation's completion. Keith then prepared a memorandum recommending that Fields be terminated. Delta subsequently did so, on the ground that Fields had improperly handled Delta funds. Although she was given the option to resign, Fields refused to do so. Shortly thereafter, Fields was informed of her termination.

Weeks later, Fields filed suit against Delta in Texas state court, and Delta removed to federal district court. Fields asserted state-law claims of defamation, theft, conversion, and invasion of privacy, together with a federal claim that her termination was in violation of the Railway Labor Act[3] ("RLA"). In short, Fields's theory of liability is that Delta brought the theft charges against her in retaliation for her vocal support of a union organization drive at Delta. Delta denied all liability and moved for summary judgment on all claims. The district court granted Delta's motions and dismissed Fields's claims with prejudice.[4] This appeal followed.

II.

ANALYSIS

A. Standard of Review

We review a grant of summary judgment de novo, applying the

---

[3] 45 U.S.C. § 151 et seq.

[4] Fields's claims as to Bryant were dismissed without prejudice after the district court concluded that he had not been properly served. On appeal, Fields does not contest the district court's dismissal of her claims against Bryant.

4

same standard as the district court.[5]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[6]  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[7]

The standard for summary judgment mirrors that for judgment as a matter of law.[8]  Thus, we must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[9]  In reviewing all the evidence, we must disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[10]

B.  Fields's Defamation Claim: Qualified Privilege

Although Fields has raised several issues on appeal, only one merits discussion.  Fields contends that Delta lost its qualified

---

[5]Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[6]Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[7]See Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[8]Celotex Corp., 477 U.S. at 323.

[9]Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

[10]Id. at 151.

5

privilege as an employer to make statements about her suspected misconduct as an employee because it did so with actual malice. We agree with Fields's view of the law but disagree with her assertion of the presence of actual malice.

Under Texas law, "a communication made on a subject matter in which the person making it has an interest is privileged if made to persons having a corresponding interest or duty."[11] Texas courts have long recognized that the qualified privilege applies to statements by employers (and their employees) to interested persons about an employee's suspected misconduct.[12] A qualified privilege is lost, however, if its holder makes statements with actual malice.[13]

As used in defamation cases, "actual malice" is a term of art which means "the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true."[14] Reckless disregard, in turn, is defined as "a high degree of awareness of probable falsity, for proof of which the plaintiff must present sufficient evidence to permit the conclusion that the

---

[11]Danawala v. Houston Lighting & Power Co., 14 F.3d 251, 254 (5th Cir. 1993).

[12]Bergman v. Oshman's Sporting Goods, Inc., 594 S.W.2d 814, 816 (Tex. Civ. App.—— Tyler 1980, no writ).

[13]Duffy v. Leading Edge Products Inc., 44 F.3d 308, 313 (5th Cir. 1995).

[14]See Hagler v. Proctor & Gamble Mfg. Co., 884 S.W.2d 771, 772 (Tex. 1994).

defendant in fact entertained serious doubts as to the truth of [the] publication."[15] Errors in judgment are not enough to support allegations of actual malice.[16] Furthermore, "[f]alsity coupled with negligence, failure to investigate the truth or falsity of a statement, and failure to act as a reasonably prudent person are insufficient to show malice."[17]

Fields does not dispute that the statements of which she complains are privileged.[18] Instead, she contends that there is a material fact issue with respect to whether the statements were made with actual malice such that the privilege was lost.

Fields has presented no competent summary-judgment evidence to support her claim that Keith, Dillard, and Bryant made the statements at issue knowing they were false or with reckless disregard of whether they were false, i.e., with a high degree of awareness of probable falsity. In particular, Fields misconstrues dicta from our opinion in Duffy to stand for the proposition that a qualified privilege is lost if there is a "fabricated story" or "ulterior motive" by the defendant.[19] But Duffy said no such thing.

---

[15]Duffy, 44 F.3d at 313 (internal quotation marks and citation omitted).

[16]Id.

[17]Maewal v. Adventist Health Systems/Sunbelt, Inc., 868 S.W.2d 886, 893 (Tex. App.—— Fort Worth 1993, writ denied).

[18]We assume for the purpose of deciding this appeal that the statements themselves were defamatory.

[19]See Duffy, 44 F.3d at 313-15.

Rather, that case's mention of fabrication as potential evidence of actual malice was referring to a situation in which there were no underlying allegations of misconduct and the speaker knowingly misrepresented the existence of such allegations. Here, by contrast, it is undisputed that Delta received several complaints from Field's fellow flight attendants about her suspected misconduct.

Fields's reliance on Duffy's mention of "ulterior motive" as potential evidence of actual malice is similarly misplaced. Like the plaintiff in that case, Fields has presented no evidence that "the investigation was a mere pretext for a decision that had already been made."[20] Fields insists that the "real" reason for her termination was retaliation for her vocal support of union-organizing efforts at Delta. But the bare fact that Fields supported such efforts is insufficient as a matter of law to establish the requisite nexus to her termination.[21] We have combed the record in this case but find no facts that could enable a reasonable jury to conclude that, despite Fields's subjective belief, anyone at Delta acted on any anti-union animus in investigating or terminating Fields.

In sum, Fields has not adduced competent summary-judgment evidence that Keith, Bryant, or Dillard made any statement that

_____

[20]See id. at 314.

[21]NLRB v. Soft Water Laundry, Inc., 346 F.2d 930, 935-36 (5th Cir. 1965).

8

they either (1) knew was false when they made it or (2) actually entertained serious doubts about when they made it. As Fields has failed to raise a material fact issue with respect to actual malice, we agree with the district court that the allegedly defamatory statements made in this case were privileged. Accordingly, summary judgment was providently granted.

III

CONCLUSION

For the reasons discussed above, we affirm the district court's summary judgment for Delta and Keith in all respects. AFFIRMED.